[S. F. No. 16060. In Bank.—October 19, 1938.]

ERIC C. W. S. LYDERS, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

S. C. Wright and Robert Littler for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—This is a proceeding to review the recommendation of the board of governors of The State Bar that petitioner be suspended from the practice of law for a period of two years. In the order to show cause, issued by local administrative committee No. 2 of the city and county of San Francisco, petitioner was cited before said committee to show cause why he should not be disciplined for professional misconduct. (Violation of subdivisions 2 and 5 of section 287 of the Code of Civil Procedure, and with the violation of rule 4 of the Rules of Professional Conduct of The State Bar of California.) The specific charge brought against petitioner was that, as a trustee of an express trust, he violated his instructions and purchased property from himself with trust funds, failing to disclose to the beneficiary of the trust, or her agents, his self-interest in said transaction, and failing to convey the property so purchased to his beneficiary until required to do so by a judgment of a court in an action by the beneficiary to compel a conveyance by him and for an accounting. The local administrative committee before whom the hearing was held, found the charges to be true, and recommended to the board of bar governors that petitioner be suspended from the right and privilege to practice law for a period of ninety days. Upon a hearing before the board of bar governors, said board adopted the findings of the local administrative committee, but recommended that petitioner be suspended from the practice of law for a period of two years.

The facts found by the local administrative committee are amply supported by the record. Most of them are not disputed. Petitioner was a friend of the family of

Katherine T. Bull and her husband, Commodore James H. Bull, for a number of years prior to 1932. In 1932, upon the death of Commodore Bull, it was deemed advisable by her children that arrangements should be made to assure their mother an adequate allowance for her living expenses. Formerly a very wealthy woman, she had lost her fortune, and was advanced in years and in ill health. Petitioner agreed to act as trustee without compensation to receive certain moneys for Mrs. Bull and disburse them. He received explicit instructions from Colonel Harry Bull, son of Mrs. Bull, that no investments were to be made but the money was to be deposited in a bank in order to take care of the living expenses of their mother. Petitioner received as such trustee $7,516.73 then on deposit with the bank, $1549.15 from insurance and the sum of $200 each month for six months as a contribution by Colonel Bull to the trust fund. Petitioner during this time held a general power of attorney previously executed by Mrs. Katherine Bull. Subsequent to petitioner's assumption of the trust, he deemed it advisable to pay off a mortgage on some property belonging to Mrs. Bull in Santa Barbara to render the property more marketable, and upon receiving the sanction of Colonel Bull to this disbursement, made the necessary payment of $5,000. In September, 1932, petitioner took $1,000 from the trust fund belonging to Mrs. Bull and applied it to the purchase of his own interest in a contract of sale of certain property owned by him in Sacramento. This property consisted of a five-acre lot which had previously been sold by petitioner to one Mary Alder for the sum of $1750. She had subsequently assigned her interest to an attorney by the name of Needham of Sacramento, and in September, 1932, there was a balance of approximately $1,000 owing to petitioner under the contract of sale payable at the rate of about $10 per month. The contract had been recorded and a deed from petitioner to Mary Alder had been placed in escrow by petitioner with the real estate firm of Waters, Neideffer & Waters of Sacramento with instructions to deliver the deed to Mary Alder upon the payment of the final instalment of the purchase price. Petitioner by letter informed Colonel Bull, who was then in Washington, that he had "put $1,000 of the savings money into a land contract where it will be repaid in about three years with interest at

7%''. There is evidence that petitioner was in financial diffi-
culties at this time and was involved in personal litigation.
In February, 1933, the trust fund had become practically ex-
hausted in payment of the expenses of Mrs. Bull, and an
accounting was sought by Colonel Bull from the petitioner.
This account was furnished by petitioner April 13, 1933, in
which the transaction was listed: ''Investment Needham Con-
tract . . . $1,000.'' Colonel Bull testified that petitioner
did not at that time disclose to him the fact that he had any
self-interest in the transaction, and did not comply with
Colonel Bull's request for documentary proof of Mrs. Bull's
ownership of the property. Petitioner stated, according to
the testimony of Colonel Bull, when pressed for the documen-
tary proof of ownership in Mrs. Bull, that ''he would write
for it''. The last payment to Mrs. Bull on the Needham
contract was in June, 1933, and she had placed the matter
in the hands of Mr. Berger, a business man of Santa Barbara,
to find out from the petitioner the nature of the transaction
and the status of the contract. Numerous letters were writ-
ten to petitioner by Berger in an endeavor to ascertain the
nature of the investment made with Mrs. Bull's money, and to
secure some documentary evidence of the transaction, but no
satisfaction could be obtained from him. In December, 1934,
in a letter to Mr. Berger, petitioner stated that the property
had been formerly owned by him and sold under contract to
Mary Alder. According to the testimony of Colonel Bull this
was the first time the fact was brought to his knowledge that
petitioner had a personal interest in the Needham contract.
Needham defaulted in the contract of purchase. Petitioner,
instead of giving a deed of the property to Mrs. Bull, as he
was importuned to do by Mr. Berger, wrote that he was en-
titled to reimbursement and compensation for his handling of
the property. Although Mr. Berger wrote to the effect that
if petitioner would straighten the matter out so that Mrs.
Bull would have proof of the transaction, he would be re-
munerated, petitioner, instead of complying, made another
sale of the property. This sale, after a couple of payments
by the purchaser, which payments were absorbed by the real
estate commission, fell through. Mrs. Bull finding it impos-
sible to obtain any satisfaction from petitioner, in May, 1936,
commenced an action in the superior court at Sacramento

by filing a complaint entitled, "Complaint to declare a trust and for an accounting." Petitioner by answer admitted that he held the property in trust for Mrs. Bull and alleged that he was willing to convey the property on being paid the reasonable value of his services in connection therewith. The court made its order requiring a conveyance by him to Mrs. Bull or a repayment by him of the amount due to Mrs. Bull with interest. From this judgment he appealed. Subsequently he delivered said deed and dismissed the appeal.

There can be little doubt that disciplinary action is warranted. Petitioner, as an attorney, was well aware that he was violating his duty as a trustee in using money belonging to the trust fund to purchase property owned by himself. His failure and neglect to furnish Mrs. Bull with documentary evidence of the transaction was inexcusable. Had he been dealing for her with third parties, he would as a matter of course have obtained such documentary proof. In using her money to deal with himself, he necessarily owed her at least the same duty to furnish documentary proof of the transaction. ■ The fact that the beneficiary did not repudiate the purchase of said property, but continued friendly relations with petitioner for some time thereafter, and subsequently in suing him sought a conveyance from him of the property rather than a money judgment for the amount taken by him from the trust fund, does not exonerate petitioner. It is apparent from the record that the acceptance by the Bull family of the transaction was not voluntary, but that they, under the impression that the deal had been made with a third party, simply made the best of a bad situation. In seeking a conveyance of the property in the suit in Sacramento, the attorney for Mrs. Bull wisely deemed a conveyance of the property preferable to a money judgment. This conduct on the part of the Bull family cannot be deemed a ratification of the transaction.

We are of the opinion that the conduct of petitioner under the circumstances here involved fails to measure up to the high standard of conduct required of him by his oath as an attorney, and that his suspension from practice for the period of two years is not too severe a punishment for his offense.

It is, therefore, ordered that petitioner be suspended from the practice of law in this state for a period of two years, said suspension to become effective thirty days after this order becomes final.

Rehearing denied.