[No. S002014. Mar. 31, 1988.]

LLOYD MARTIN SEGAL, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Lloyd Martin Segal, in pro. per., and Arthur Margolis for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

OPINION

THE COURT.—The Review Department of the State Bar Court recommends that petitioner Lloyd Martin Segal, who was admitted to practice in 1976, be suspended from the practice of law for a period of three years; that execution of the order be stayed; and that Segal be placed on probation for three years on conditions which include actual suspension for one year, various reporting provisions, passage of the Professional Responsibility Examination, supervision by a probation monitor referee, and compliance with rule 955, California Rules of Court.

The recommendation is based on the hearing panel's findings of fact and conclusions of law, adopted unanimously by the Review Department, that Segal in four matters (1) intentionally and/or with reckless disregard of his clients repeatedly failed to perform legal services for which he was retained and failed to return unearned fees; (2) failed to communicate promptly with his client and failed to keep his client advised of the progress of the matter for which he was retained; (3) issued checks on an account which he knew or reasonably should have known had insufficient funds. The Review

Department recommendation, adopted by a vote of ten to three,[1] differed from the recommended discipline of three years' actual suspension adopted by the hearing panel.

Segal, who is in propria persona, contends that (1) the two matters involving client representation (the Community Meditation Center of Los Angeles and West Coast Ensemble matters) should be dismissed because he accepted them on a pro bono basis without charging a fee for the services and in any event he performed "substantial services . . . in a reasonable time frame under the circumstances of his employment"; (2) the bad checks were written under mitigating circumstances; (3) the checks were written in Segal's capacity as principal of Regency Records, Inc., not in his practice of law; and (4) the discipline recommended by the State Bar Court of one year of actual suspension from the practice of law is excessive.

### STANDARD OF REVIEW

■ We rely heavily on the findings, conclusions, and recommendations of the State Bar Court in disciplinary proceedings. (*Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 968 [239 Cal.Rptr. 675, 741 P.2d 172].) However, the State Bar's findings are not binding on this court. In attorney discipline matters we must independently review the evidence, pass upon its sufficiency, and resolve all reasonable doubts in favor of the attorney. (*Galardi* v. *State Bar* (1987) 43 Cal.3d 683, 689 [238 Cal.Rptr. 774, 739 P.2d 134]; *Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 11 [206 Cal.Rptr. 373, 686 P.2d 1177].)

■ The burden to prove the findings of the State Bar are unsupported by the evidence lies with the petitioner. (*Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].) " 'In meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. [Citation.]' " (*Galardi* v. *State Bar, supra,* 43 Cal.3d at 689, citing *Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P.2d 993].) Segal has not met the requisite burden of proof. Accordingly, we adopt the discipline recommended by the Review Department.

---

[1] The three dissenting members so voted on the ground the recommended discipline was insufficient, since Segal engaged in a demonstrated pattern of misconduct involving, inter alia, the failure to perform services in a diligent and competent manner and the issuance of checks on insufficient funds over a significant period of time.

## DISCUSSION

### *West Coast Ensemble and Community Meditation Center of Los Angeles Matters*

The Review Department found that in May 1982 Segal was retained and paid $275 to incorporate West Coast Ensemble as a nonprofit corporation. Because of Segal's poor performance, West Coast Ensemble had to process the documents for incorporation itself.

The record supports the Review Department's findings that Segal (1) failed to perform legal services for which he had been retained, namely handling West Coast Ensemble's incorporation with the State of California and its application for nonprofit tax-exempt status with the State of California Franchise Tax Board and the Internal Revenue Service; (2) failed to exercise reasonable diligence and his best judgment; and (3) failed promptly to refund legal fees, despite demand from his client.

Les Hanson, founder of West Coast Ensemble, testified that at his initial meeting with Segal he gave Segal the background information necessary for Segal to prepare the appropriate documents for filing, that he told Segal that West Coast Ensemble needed to be incorporated as a nonprofit, tax-exempt corporation in order to receive contributions and donations, and that Segal told him the nonprofit incorporation process could take 60 to 90 days.

Three months later Segal sent Hanson copies of the articles of incorporation and bylaws, which Segal had prepared. Hanson immediately executed and returned them to Segal. Segal testified that on September 13, 1982, he forwarded West Coast Ensemble's application to the office of the Secretary of State. When these documents reached the Secretary of State's office, and what happened to them between September and February when Segal stated they were returned to him unfiled, is a mystery.[2]

In a letter to Segal dated January 28, 1983, Hanson outlined the course of events that resulted in his pro se filing of the application forms for West Coast Ensemble's incorporation: "We waited for what we thought was a

---

[2] Segal stated that in February 1983 the office of the Secretary of State returned to Segal, unfiled, the application he submitted on behalf of West Coast Ensemble, because the name West Coast Ensemble had already been requested, presumably by Hanson when he learned the name had not been reserved by Segal and filed the appropriate documents himself in December 1982.

Assistant Secretary of State Jerry Hill submitted a declaration as evidence to be considered by the hearing officer. However, for reasons not given, he did not testify regarding this matter.

normal amount of time for results on these applications. When there were no results our President, Artistic Director and Secretary called you at different times to inquire about the progress on these matters. When still no results were received an Advisory Board member called you in December and you promised him that the material you had received from the State of California would be forwarded to me, the president. When nothing was received I, myself, processed the necessary forms with the state and federal agencies, made the necessary payments and completed the task for which you had been hired." He further stated that Segal's "unprofessional manner has cost the West Coast Ensemble months of delay in moving forward as a non-profit corporation and certain loss of voluntary contribution [sic] . . ." and he demanded return of the retainer. Segal did not return the fees until November 1983, 10 months after he received the request for refund and more than a month after the State Bar on October 21, 1983, notified Segal it was commencing formal proceedings against him.

With regard to the Community Meditation Center of Los Angeles (Center) matter, the Review Department found that in January 1983 Michael DeKoven retained Segal and paid him $300 to incorporate the Center as a nonprofit religious organization. The record supports the Review Department's findings that Segal (1) failed to perform the services for which he had been retained; (2) failed to communicate promptly with his client, keep him advised of the progress of the matter, or respond to inquiries from his client; (3) failed to refund legal fees despite demands from his client; (4) failed to exercise reasonable diligence and his best judgment; and (5) withdrew from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his client. We agree.

The evidence overwhelmingly demonstrates Segal's failure to communicate with DeKoven. A letter from DeKoven to Segal dated May 31, 1983, indicates that DeKoven attempted without result to have Segal send him evidence of the incorporation filing. In the same letter, DeKoven threatened to request a refund if the evidence was not forthcoming. Subsequent letters dated June 20, 1983, and September 8, 1983, requested Segal to communicate with DeKoven regarding the transaction and alluded to Segal's failure to return phone calls. There is no evidence that Segal responded.

On September 14, 1983, DeKoven demanded a refund. On September 21, 1983, he again demanded a refund and informed Segal he had requested forms to file a formal complaint with the State Bar of California. On September 12, 1983, incorporation documents for the Center were received in the office of the Secretary of State, submitted by Segal who was apparently still not communicating with his client. The documents were returned to Segal on September 19, 1983, because the articles of incorporation were not

acknowledged and the fee payment was insufficient. On October 3, 1983, the documents were resubmitted by Segal. In October 1983 DeKoven retained another lawyer who promptly filed the required documents with the Secretary of State. In December 1983 the articles of incorporation submitted by Segal were returned to Segal unfiled, as the name Community Meditation Center of Los Angeles was taken, presumably as a result of the filing completed by Center's new attorney.

Following two requests by DeKoven, Segal refunded the Center's fees on September 27, 1983, one week after DeKoven informed Segal he intended to file a complaint with the State Bar.

■ Segal urges us to dismiss the complaints discussed above on the ground that he accepted the West Coast Ensemble and Center matters on a pro bono basis. He claims the $275 and $300 payments were not attorney fees but advances of refundable filing fees and costs of secretarial services.[3] Segal states that because he was spending most of his time on Regency Records, Inc. business, "he did not have the time to handle the pro bono matters in an expedited fashion."

Segal's argument presupposes that pro bono clients deserve less diligent service than paying clients, a proposition that undermines the integrity of the legal profession. An attorney's standard of professional conduct to a pro bono client should be no different from his or her responsibility to any other client. If an attorney lacks the time and resources to pursue a client's case with reasonable diligence, he or she is obliged to decline representation (*Lopez* v. *Larson* (1979) 91 Cal.App.3d 383, 400 [153 Cal.Rptr. 912]; *Brown* v. *Pacific Tel. & Tel. Co.* (1980) 105 Cal.App.3d 482, 487-488 [164 Cal.Rptr. 445]), regardless of whether the attorney is paid or performs services pro bono.

We likewise do not excuse Segal's lack of diligence in serving the Center and West Coast Ensemble based on his contention that he informed the clients in both matters the process of incorporation as a nonprofit corporation could take from four to six months. The record contains controverting testimony that Segal estimated the length of time at between 60 to 90 days. The hearing panel and the Review Department found that Segal failed to exercise due diligence. ■ Where evidence is conflicting and rests primarily on testimonial evidence, " ' ". . . we are reluctant to reverse the decision of the local administrative committee, which was in a better position to evaluate conflicting statements after observing the demeanor of the

---

[3] We note, however, that Segal admitted in his answer to the notice to show cause that he was "hired" by DeKoven and "retained" by Hanson.

witnesses and the character of their testimony. . . ." ' " (*Vaughn* v. *State Bar* (1972) 6 Cal.3d 847, 852 [100 Cal.Rptr. 713, 494 P.2d 1257]; *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 121 [202 Cal.Rptr. 349, 680 P.2d 82].) In any event, when Segal did not mail essential documents to the Secretary of State on behalf of the Center until nine months after he had been retained, and only after his client demanded a refund, he failed to exercise due diligence.

■ Finally, Segal contends that the Center and West Coast Ensemble matters should be dismissed because Segal performed substantial services in a reasonable time frame under the circumstances. Segal was aware his clients needed nonprofit status to obtain contributions, yet he took nine months to file the Center's documents and four months to file West Coast Ensemble's. In both cases the documents consisted of fewer than 20 pages. This time frame is not reasonable under the circumstances. Furthermore, because of Segal's failure to provide services, his clients were forced to find alternative means of completing the incorporations. Explicit in the term "substantial services" is the concept of service. Here, although Segal claims to have generated and mailed the necessary documents, neither of his clients was served.

### The Gribow Matter

The Review Department found that Segal tendered checks for $6,000 and $2,500 to Dale Gribow when Segal knew or with reasonable diligence should have known that the Regency Records, Inc. account on which the checks were drawn contained insufficient funds. The record supports the Review Department's finding that Segal failed to exercise reasonable diligence and his best judgment in this matter.

In August 1982 Segal tendered a $6,000 check to Dale Gribow for the purchase of Gribow's Jeep. The account on which the check was written was overdrawn during the entire month of August. Gribow testified he unsuccessfully presented the check for payment 15 times. Three months later Segal tendered a second bad check to Gribow for $2,500 in partial restitution. Segal repaid Gribow $6,950 between January 13, 1983, and September 19, 1983.[4]

Gribow testified that in March 1983 he telephoned a State Bar investigator to complain about Segal and in June 1983 he sent a letter of complaint to the State Bar. He also testified that two to three weeks later he informed Segal of the complaint.

---

[4] Segal testified that he had inadvertently overpaid Gribow and Gribow refused to refund the excess payment.

Segal claims the State Bar Court failed to give sufficient consideration to the fact that he began repaying the $6,000 obligation prior to Gribow's complaint to the State Bar. On the contrary, the Review Department decision reflects substantial consideration of this factor. Indeed, it was listed as one of two mitigating factors.

Segal further claims the State Bar Court did not give sufficient consideration to the fact he was not acting in his capacity as an attorney in the Gribow matter. ■ However, it is well settled that an attorney may be disciplined for an act even though it is not committed in his or her professional capacity as an attorney. (*Jacobs* v. *State Bar* (1933) 219 Cal. 59, 63 [25 P.2d 401]; *Lyders* v. *State Bar* (1938) 12 Cal.2d 261, 265 [83 P.2d 500]; *Fall* v. *State Bar* (1944) 25 Cal.2d 149, 160 [153 P.2d 1]; *Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 713 [108 Cal.Rptr. 821, 511 P.2d 1173].)

*Savage Matter*

The Review Department found that Segal and/or a corporation in which he was the only principal, Regency Records, Inc., leased premises from Dr. A. Delorise Savage in January 1983, tendering a check for $654 on the Regency Records, Inc. account, when he knew or with reasonable diligence should have known that the account had a negative balance in excess of $6,000 and a substantial negative balance at all relevant times. Further, Segal remained on the premises until June 1983 without paying rent. The record supports the Review Department's conclusions that Segal failed to exercise due diligence and his best judgment in this matter.

Savage testified Segal did not make restitution for the check until January 1984, a full year after it was rejected by the bank and nearly three months after State Bar proceedings were commenced against him. Evidence submitted at the hearing established that other checks written on Segal's account had been rejected as well and that at all times between November 30, 1982, and February 28, 1983, Segal's account was overdrawn in excess of $6,000.

■ In his request for review, Segal does not contend, as he did in his hearings before the State Bar Hearing Panel and Review Department, that he did not know his account balance was insufficient to cover the Savage check. Instead, he urges us to consider the following factors in mitigation: (1) He improved Savage's property at his own expense; (2) he discovered, after moving in, that the property, which he allegedly intended to use for business purposes, was zoned residential; and (3) Savage confiscated Segal's personal property and that of Regency Records, Inc.

Segal tries unpersuasively to justify his wrongdoing by introducing allegations, unsupported by hard evidence, of Savage's wrongdoing. Savage's

behavior, even if it were established by evidence, does not excuse Segal's issuing a check which he knew or reasonably should have known was not covered by sufficient funds. Nor do we see how allegations regarding Savage's behavior explain Segal's delay of one year in making restitution. Rather than mitigating the charge, Segal's argument is evidence of his unwillingness to accept responsibility for his actions.

### Prior Discipline

In 1985 Segal was suspended for one year, execution of suspension stayed with ninety days' actual suspension, for misconduct in 1979 and 1980, in which he issued checks for $8,000 and $12,000 drawn on his Regency Records, Inc. account, knowing that the funds were insufficient to pay the checks. (Bar Misc. 4974.) Segal also wrote a check on his Regency Records, Inc. account for the down payment on his home and failed to supply adequate documentation to support his claim that all of the money constituted fees and expense reimbursement to which he was entitled, since some of the funds in the account were fees for his recording clients.

### State Bar Recommended Discipline

Segal contends one year actual suspension recommended by the State Bar Court is excessive. He states he ceased operations of Regency Records, Inc., in 1983 and since then there has been no recurrence of his conduct of writing checks without sufficient funds to cover them. He claims that no purpose but punishment would be served by imposing a second period of actual suspension.

■ Because the hearing panel decision as to facts and disposition was filed after January 1, 1986, this court looks to the Standards for Attorney Sanctions for Professional Misconduct of the Rules of Procedure of the State Bar, division V (standards). Although these standards are not binding on us, we give them great weight. (*Guzzetta* v. *State Bar, supra*, 43 Cal.3d at 968; *Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848 [743 P.2d 908].) At the threshold, under standard 1.7 (a),[5] Segal should be given a period of suspension greater than the three months he received in 1985.

---

[5] Standard 1.7 (a), Effect of Prior Discipline, states in relevant part: "(a) If a member is found culpable of professional misconduct in any proceeding in which discipline may be imposed and the member has a record of one prior imposition . . . , the degree of discipline imposed in the current proceeding shall be greater than that imposed in the prior proceeding unless the prior discipline imposed was so remote in time to the current proceeding and the offense for which it was imposed was so minimal in severity that imposing greater discipline in the current proceeding would be manifestly unjust."

██ When we are presented with a record adequate to support the recommendation, we do not hesitate to impose the recommended discipline. (*Guzzetta* v. *State Bar, supra,* 43 Cal.3d at p. 968; see also, e.g., *Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106] and *Mepham* v. *State Bar* (1986) 42 Cal.3d 943 [232 Cal.Rptr. 152, 728 P.2d 222].) ██ The record supports the Review Department's decision to suspend Segal for one year:

1. Segal agreed to represent the Center and West Coast Ensemble in their efforts to become incorporated as nonprofit corporations. He failed to exercise due diligence in pursuing the matters and failed to communicate with his client. In both cases, Segal's unprofessional conduct prevented his clients from gaining the nonprofit status requisite to their soliciting donations.

2. Although he refunded fees to the Center and West Coast Ensemble, he did not do so until disciplinary proceedings were underway in one case and after he was informed of his client's intention to file a complaint with the State Bar in the other.

3. Segal wrote checks without sufficient funds to cover them and knew or should have known the account was insufficient. The conduct of issuing numerous checks with insufficient funds " 'manifests an abiding disregard of " 'the fundamental rule of ethics—that of common honesty—without which the profession is worse than valueless in the place it holds in the administration of justice' " [Citation.]' " (*Bambic* v. *State Bar* (1985) 40 Cal.3d 314, 324 [219 Cal.Rptr. 489, 707 P.2d 862], citing *Tomlinson* v. *State Bar* (1975) 13 Cal.3d 567, 577 [119 Cal.Rptr. 335, 531 P.2d 1119].)

Segal cites *Chasteen* v. *State Bar* (1985) 40 Cal.3d 586 [220 Cal.Rptr. 842, 709 P.2d 861] and *In re Murray Donald Katz* (Bar Misc. 4956) to support his claim that the Review Department's recommended discipline is too severe. Chasteen was given a stayed suspension of five years with an actual suspension of two months for conduct in five separate matters that involved practicing law while under suspension for nonpayment of dues, commingling and misappropriating funds, and failure to perform services for which he had been retained. Unlike Segal, Chasteen presented mitigating evidence of marital problems, alcoholism, severe depression, and voluntary participation in a hospital alcohol rehabilitation program. Although Chasteen had been previously disciplined, his discipline did not consist of suspension, as did Segal's prior discipline.

Katz's disciplinary procedure is likewise distinguishable. Katz received a one-year stayed suspension for knowingly writing checks without sufficient funds, withdrawing from employment, failing promptly to refund fees, and

failing to use reasonable diligence and his best judgment. In mitigation, Katz had practiced law since 1953 *without prior record of discipline* and was suffering from severe financial problems.

■ " 'Determination of discipline turns upon several considerations, including the protection of the public, the promotion of confidence in the legal profession, and the maintenance of professional standards. [Citation.]' " (*Kent* v. *State Bar* (1987) 43 Cal.3d 729, 734 [239 Cal.Rptr. 77, 739 P.2d 1244], citing *Rimel* v. *State Bar* (1983) 34 Cal.3d 128, 131 [192 Cal.Rptr. 866, 665 P.2d 956].) In determining the degree of discipline required to accomplish these purposes, we consider mitigating and aggravating circumstances.

■ The Review Department mentioned two mitigating factors it considered in making its recommendation: (1) Although the knowing issuance of the $6,000 bad check is not to be condoned, Segal began to make monthly payments in December 1982, before the complainant contacted the State Bar, and he eventually made the complainant whole; (2) although the issuance of bad checks is a serious offense, the checks at issue were written at the same time as the checks for which Segal was previously disciplined and before the first State Bar proceeding was commenced. In aggravation, the Review Department cited Segal's prior disciplinary proceeding.

A second aggravating circumstance is that Segal's misconduct consisted of multiple acts of wrongdoing. He is before us on four separate matters. The two bad check charges are linked in time to two previous similar charges for which he was disciplined just two years ago.

In view of the aggravating and mitigating circumstances, the one year actual suspension recommended by the State Bar Review Department is warranted.

Accordingly, it is ordered that Lloyd Martin Segal be suspended from the practice of law for a period of three years; that execution of the order for suspension be stayed; and that petitioner be placed on probation for three years upon conditions that he be actually suspended for one year; that during his period of suspension he take and pass the Professional Responsibility Examination; and that he comply with the additional terms of probation set forth in the State Bar Review Department's recommended order. It is also ordered that Segal comply with the provisions of California Rules of Court, rule 955, and that the acts specified in subdivisions (a) and (c) of that rule be performed within 30 and 40 days, respectively, after the effective date of this order. This order is effective upon finality of the decision.

LUCAS, C. J.—I respectfully dissent. In my view, petitioner's misconduct was sufficiently serious to warrant more severe discipline than that imposed by the majority.

The State Bar hearing panel, which directly heard and evaluated the credibility of petitioner and the other witnesses, recommended a punishment which included three years actual suspension. I would approve that recommendation in light of petitioner's prior disciplinary record and his present misconduct. (I note that although the Review Department reduced the hearing panel's recommended punishment to a one-year actual suspension, three of the thirteen members of the department would have imposed greater discipline.)

Petitioner was admitted to practice in 1976. In 1985, he received a 90-day actual suspension (1-year probation) for issuing checks on insufficient funds in 1979 and 1980. His misconduct continued throughout the period from 1982 to 1984. As disclosed in the majority opinion, petitioner's present misconduct involved *four* separate matters, and included issuing several more checks on insufficient funds, as well as neglecting clients, failing to perform services, and failing to return unearned fees.

As the majority observes, petitioner tendered no substantial mitigating circumstances, other than the fact that he commenced repaying one bad check before State Bar proceedings were initiated. On the other hand, aggravating circumstances include his prior discipline, and his multiple acts of misconduct in the present proceeding.

I would impose the discipline recommended by the hearing panel, including a period of three years actual suspension.