[No. S006541. Jan. 26, 1989.]

MARC L. GOLDSTEIN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

## COUNSEL

David A. Clare and Arthur L. Margolis for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Major Williams, Jr., and Thomas J. Kelley for Respondent.

## OPINION

**THE COURT.**—On December 10, 1985, this court issued an order admitting a list of persons, including petitioner, to the practice of law in California. On February 13, 1986, the Committee of Bar Examiners moved the court to delete petitioner's name from the list, nunc pro tunc, on the ground

that petitioner was ineligible to apply for such admission. In order to obtain further information regarding the circumstances surrounding petitioner's admission, we denied the motion without prejudice and referred the matter to the State Bar "for hearing, report and recommendation as to whether Marc L. Goldstein has committed misconduct warranting discipline."

Following a hearing before the State Bar Court, the hearing panel (one referee) filed an opinion on August 13, 1987, concluding that petitioner committed acts warranting discipline, and recommending that this court refer the matter back to the hearing panel for a determination as to the level of discipline to be imposed. Both petitioner and the State Bar filed requests for review with the Review Department of the State Bar Court.

On February 25, 1988, the review department unanimously determined that petitioner committed misconduct which misled the Committee of Bar Examiners to certify him to practice without a full assessment of his moral character, and recommended that this court either vacate its order admitting petitioner to the practice of law or re-refer the matter to the State Bar for a determination of the appropriate discipline to be imposed. Petitioner sought review of this determination; we construed the review department's recommendation as a renewal of its motion to delete petitioner's name from the list of those admitted to the State Bar, and issued a writ of review. We now adopt the review department's findings of fact, and order defendant's name stricken from the roll of attorneys.

## FACTS

In February 1979, petitioner took and passed the California bar examination. His certificate for admission, however, was delayed pending a moral character investigation. In July 1982, following a lengthy hearing, a hearing panel of the State Bar Court recommended that petitioner's certificate for admission be denied on the ground that he did not possess the requisite moral character. This recommendation was based on findings that petitioner: (1) deliberately abused the judicial process by filing numerous actions to harass tradespeople and others with whom he had petty disputes and to obtain nuisance settlements to which he was not entitled; (2) knowingly made false statements under oath to advance his interests in the course of several of his lawsuits; (3) engaged on several occasions in the unauthorized practice of law; and (4) committed acts of fraud against various entities, including the filing of a false claim for reimbursement for "lost" money orders which were not in fact lost, making knowingly false statements on an application to practice law in Georgia, filing claims for lost baggage against several airlines which either falsely stated that the baggage was lost or

greatly exaggerated the value of the items lost, making false statements on a credit application, and engaging in a check-kiting scheme.

On January 19, 1983, following a further hearing at which petitioner testified, the Committee of Bar Examiners adopted the findings of the hearing panel and denied petitioner certification to practice law in the State of California. The committee further ruled that "[p]ursuant to Rule X, Section 104(a) [of the Rules of the State Bar Regulating Admission to Practice Law in California] the period when another application may be filed is extended to three years from the date of denial of the application."[1] Petitioner unsuccessfully sought review of the ruling from this court, and, through counsel, made unsuccessful written attempts to obtain a waiver of the requirement that he retake the California bar examination.

By a letter dated January 8, 1985, only two years after the ruling of the Committee of Bar Examiners, petitioner made a written request for an application form to take the February 1985 bar examination. The letter followed a telephone conversation between petitioner and Paula Daniels, employed by the State Bar as an assistant section chief of receipts, the content of which is in dispute. At his request, petitioner was provided with the "attorney-repeater" application packet, and applied for and took the February 1985 bar examination.[2] He failed that examination, and subsequently applied for and took the July 1985 examination. Neither his letter nor his application forms mentioned the hearings into his character or that he had previously been denied certification to practice law. The application forms did mention that he had previously applied to practice law in 1979, and furnished an update of three cases to which petitioner was a party which had not been resolved at the time of his previous application.

Shortly after petitioner took the July 1985 bar examination, the State Bar requested from him further information regarding the three cases listed on his application, which he provided. In the course of providing this information, he had several telephone conversations with Admissions Analyst Bernardo Rodriguez. The State Bar also requested a copy of his 1979 application to take the bar examination. Petitioner provided a copy of this application; however, the answers to two of the questions on the 1979 form (the questions dealing with accusations of fraud and civil litigation in which he

---

[1] Although the committee did not make its formal written findings and conclusion until January 19, 1983, it heard the matter on November 19, 1982, and mailed petitioner notice of its intended decision four days later. It is unclear whether the three-year period established by the committee began in November 1982 or January 1983; however, the question does not affect the result in the instant proceeding.

[2] Petitioner was an attorney licensed to practice law in Kansas, and was a "repeater" because he had previously taken the bar examination.

had been involved) read, "see attached sheet [information is being compiled and will be mailed in shortly]." (Brackets in original.) The copy of the 1979 application provided by petitioner contained no "attached sheets," and the cover letter he attached made no mention of the inquiry into his character.

Petitioner passed the July 1985 bar examination. The State Bar failed to recognize that there had been previous hearings into his moral character, and routinely recommended that he be certified for admission. Following our order admitting him to practice on December 10, 1985, the State Bar discovered its oversight, and the instant proceedings commenced.

Petitioner contends the recommendation of the review department is unsupported by the evidence, that prejudicial evidence was improperly admitted against him at the hearing, and that the State Bar denied him discovery of relevant and exculpatory evidence. As will be seen, we find each of these claims unmeritorious.

### Discussion

#### I. Sufficiency of Evidence

We first address petitioner's claim that the evidence does not support the findings of the review department. ■ The State Bar's findings are not binding on this court, and we must independently review the evidence, resolving all reasonable doubts in favor of the attorney. (*Segal* v. *State Bar* (1988) 44 Cal.3d 1077, 1081 [245 Cal.Rptr. 404, 751 P.2d 463]; *Galardi* v. *State Bar* (1987) 43 Cal.3d 683, 689 [238 Cal.Rptr. 774, 739 P.2d 134]; *Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 11 [206 Cal.Rptr. 373, 686 P.2d 1177].) However, we rely heavily on the State Bar's findings, conclusions, and recommendations, and the burden of proving them unsupported by the evidence lies with petitioner. (*Segal* v. *State Bar, supra,* 44 Cal.3d at p. 1081; *Galardi* v. *State Bar, supra,* 43 Cal.3d at p. 689; *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].)

The review department's findings of misconduct rest upon two grounds. First, the review department found that petitioner acted improperly in applying for readmission prior to the expiration of the three-year period established by the Committee of Bar Examiners in its January 19, 1983, meeting. Second, it found petitioner improperly failed to notify the State Bar of the prior inquiry into his character despite being called upon to do so on his application form. Petitioner challenges each of these conclusions.

#### A. *Premature Application*

■ Petitioner concedes the three-year "application" period set by the Committee of Bar Examiners had not yet expired at the time he reapplied to

take the bar examination in 1985. However, he argues that applying to take the bar examination and applying for admission to the bar are not one and the same thing, and the conmittee's order merely barred him from the latter. He claims he was entitled to retake the bar examination so that he could reapply for admission as soon as possible after the expiration of the three-year period. The claim is insupportable.

Rule X, section 104(a) of the State Bar Rules Regulating Admission to Practice Law in California states that "[a]n applicant who has been denied certification for admission to practice law . . . because the applicant has not proven that he or she is possessed of good moral character may file another application for admission and pay the required fee after the expiration of two (2) years from the date of such denial or such shorter or longer period as may have been set by the committee. . . ." Here the period set by the committee was three years. Petitioner's apparent contention is that the words "application for admission" contained in section 104 have nothing to do with the application to take the bar examination, which he regards as a separate prerequisite to the application for admission. However, no such dichotomy appears in the Rules Regulating Admission to Practice. The application to take the bar examination is inseparable from the application to practice law. Applicants do not file an initial application to take the bar examination, followed by a separate application to practice law; rather, only one application form is filed. That form contains a declaration, which was signed by petitioner, which states in part that "I am the *applicant for admission to practice* referred to." (Italics added.) It is thus clear that by sending in his application form petitioner was not merely attempting to retake the bar examination. Rather, he was making a new application for admission, at a time when the Rules Regulating Admission to Practice and the ruling of the Committee of Bar Examiners explicitly barred him from doing so.[3]

Petitioner further argues that even if his attempt to retake the bar examination was in fact premature, he held a good faith belief that he was entitled to take it when he did. This claim must also be rejected. As noted by the review department, a June 8, 1983, letter written to the State Bar by petitioner's attorney on his behalf recognizes that the committee's order "wishes to exclude my client for an additional three years, plus one year's time necessary to sit for and pass the 1987 Fall Bar Examination." Thus, by his own correspondence with the State Bar, petitioner evidenced a recognition of the fact that the bar examination could not be taken until after the expiration of the three-year period.

---

[3] This conclusion is unaltered by the fact that, as noted by petitioner, an applicant need not retake the bar examination if he has passed it within five years of his application. (Rules Regulating Admission to Practice Law, rule XIII, § 131.)

Petitioner claims that prior to applying for and taking the bar examination he consulted with Paula Daniels, an assistant section chief of receipts, advised her of the prohibition, and was informed that he could take the exam. Daniels testified that she had no recollection of the call, but had an individual who was the subject of a moral character investigation asked her when he could take the bar examination she would have referred the matter to her superiors. The review department concluded that petitioner did not inform Daniels about his moral character proceedings.

We concur in the finding of the review department. It is highly unlikely that Daniels would have granted the authorization claimed by petitioner when she was aware that she was not empowered to do so. It is equally unlikely that petitioner would believe he could obtain such authorization from Daniels. All of petitioner's previous written correspondence was either with James B. Tippin, Jr., Executive Director of the Committee of Bar Examiners, or with various attorneys representing the State Bar, and as the review department stated, it is disingenuous for him to claim he believed he could obtain oral authorization to take the examination from a person in the nonsupervisory position occupied by Daniels. Petitioner has failed to show that the review department's finding is unsupported by the evidence.[4]

B. *Failure to Disclose Character Hearings*

■ Next, petitioner contests the review department's finding that he improperly failed to disclose the hearings into his character on his application form. The review department concluded he was required to make the disclosure in that section of the application entitled "Civil Cases, Administrative Proceedings," which instructed the applicant to "please state each civil case . . . and administrative proceeding in which you have been involved, or in which you are presently involved." Applicants were cautioned to "[l]ist only new incidents or cases in which there had been a change of status since your previous application." Petitioner made no mention, either here or anywhere else on his application form, of the previous hearings and determination that he should not be certified for admission to the bar.

Petitioner asserts that his moral character proceeding was not a "new incident" and he was therefore not obligated to report it. However, the

[4] Petitioner's letter to the bar following his conversation with Daniels noted that he was a Kansas attorney who had previously taken the California bar examination and then stated, "[i]n speaking with Ms. Paula Daniels of your office today, I am told that I should ask for an 'attorney repeater' packet, in view of my situation." We reject petitioner's contention that the reference to "my situation," which appears to refer to the fact that petitioner is an "attorney repeater," is in any way sufficient to place the bar on notice that it should check its records to see whether there had been inquiries into petitioner's character.

proceeding was indeed a "new incident," since it had not begun at the time that petitioner filled out his 1979 application form. Moreover, the form required him to report not only new incidents but also cases in which there had been a change of status since his previous application. Even if it could be claimed that the inquiry into his character was not "new," there certainly had been a change of status in that matter since the time of his previous application, which was required to be disclosed. The manifest intent of the form's language was to enable a screener examining both the new and old application forms to obtain a complete picture of all administrative proceedings in which the applicant had been involved. A person examining petitioner's 1979 and 1985 application forms would be unaware that he had been involved in any administrative proceedings relating to his qualifications to practice law. We thus conclude that the language of the application form required petitioner to set forth the details of the hearings into his moral character, and that he improperly failed to do so.[5]

Petitioner asserts that proof that the form did not require him to mention the character hearings is found in the fact that following this incident, and apparently because of it, the committee revised its forms to more clearly require such disclosure.[6] He suggests that prior to his own case, the bar did not consider it necessary to obtain information regarding its own proceedings, and that only when the bar discovered that it might overlook these proceedings did it perceive the necessity of asking about them on the application form. However, the revision of the form to more clearly require disclosure of such proceedings does not demonstrate the earlier form's inadequacy for this purpose. The critical question is not why the Committee of Bar Examiners altered its form; it is whether the application as it was worded in 1985 called upon petitioner with reasonable clarity to disclose the character hearings. We conclude that it did so, and that petitioner's failure to make such disclosure was willful.

---

[5] There are two other places on the application form where petitioner could appropriately have disclosed his character hearings. On page 6 applicants were asked, "[h]ave you, in a judicial or administrative proceeding, ever been charged with or accused of fraud since your last application?", and were told if the answer was "yes" to give details. Petitioner answered "no." Since petitioner's character hearings involved allegations of fraud (which were found true), his answer to this question also appears to be false. He also might reasonably have disclosed the hearings in the section entitled "Professional Sanctions and Disciplines," which required petitioner to state whether he, "as a member of any profession or organization . . . had any charges or complaints" instituted against him. As pointed out by the review department, petitioner's answer of "no" to this latter question was technically correct, since petitioner was not yet a member of the bar at the time the hearings into his character took place. Nevertheless, the presence of both of these questions on the application form makes it particularly clear that the bar was calling on the applicant to disclose proceedings such as the one in which petitioner was involved somewhere on the form.

[6] This fact was apparently not learned by petitioner until after the completion of the proceedings before the hearing panel. Petitioner's claim that he was wrongfully denied discovery of information pertaining to the revision is discussed, *infra*.

Petitioner claims the designer of the application forms, Mr. Tippin, testified that an applicant's testimony under oath to the committee in a moral character proceeding would constitute a sufficient disclosure of information so that no "update" would be required on a subsequent application. This is a mischaracterization of Mr. Tippin's testimony. The closest he came to such testimony is an affirmative response to a leading question asserting that "the reason for requiring somebody to update the application is if there is anything that is new, having a bearing on the moral character of the applicant. . . ." This in no way suggests that Tippin believed petitioner was not required to disclose the character hearings on his application form.

Petitioner further argues that even if the form did in fact call for disclosure of the hearings, he in good faith did not believe it necessary to do so. In support of this argument he asserts that when Connie Villalobos, a moral character analyst employed by the committee, requested a copy of his 1979 application, he told her to contact John Frye, the examiner in his moral character proceeding. However, Villalobos did not testify at the disciplinary proceedings, and the only evidence that the conversation took place is petitioner's testimony. This testimony is suspect in light of the failure of petitioner's written correspondence to state anything to this effect, and because had he done so, it seems likely that Villalobos would have contacted Frye, with the result that petitioner's character hearings would have been discovered. Even assuming that petitioner did in fact tell Villalobos to contact Frye, this did not relieve him of the obligation of disclosing the character hearings on his application form, nor does it demonstrate that his failure to do so was in good faith.[7]

Petitioner further claims he held the reasonable and good faith belief that the committee would match his 1985 applications with his moral character proceeding record, that he had no intent to deceive the committee, and could not have foreseen that the committee would fail to match up his new applications to take the bar examination with his prior moral character proceeding. In essence, he argues the State Bar negligently failed to recognize that he had been the subject of previous hearings into his moral character, and that he is being made the scapegoat for their failings.

We are not persuaded. While counsel for the State Bar conceded at oral argument that the bar had been negligent in processing petitioner's application, any inadequacy on the State Bar's part does not absolve petitioner of

---

[7] Petitioner also attacks the hearing panel's finding that Bernardo Rodriguez, another committee employee, asked him for a copy of his 1979 application, indicating that petitioner was aware that the person processing his application was not aware of his moral character hearing. However, this portion of the hearing panel's findings was deleted by the review department. There is thus no need to address it further.

his own responsibility to bring the prior proceedings to their attention, and to apply for readmission at a time when he was entitled to do so. The argument, moreover, is premised on the theory that petitioner was acting reasonably and in good faith. The review department's finding that the failure to disclose the disciplinary proceedings on the application form was willful is supported by petitioner's failure to mention them in any of his written communications with the committee, beginning with his request for an application form, and in his omission of the factual information most likely to bring those proceedings to light when he provided the committee with a copy of his 1979 application. We find the review department's findings of misconduct to be amply supported by the evidence.[8]

## II. WITHHOLDING EVIDENCE

Petitioner next contends the State Bar concealed from him important evidence prior to the proceedings before the hearing panel. The evidence to which he refers is the fact that subsequent to this incident the State Bar altered its application form so as to more specifically require the disclosure of proceedings such as those in which petitioner was involved. He argues that concealment of this information denied him a fair hearing. He is mistaken.

It is clear that the hearing panel was aware of the change in the form. Indeed, the hearing panel's opinion specifically discusses this fact, stating, "[t]he fact that the Committee may have changed the form does not indicate that . . . disclosure was not required on previous forms." Petitioner stressed the change in the application form in an unsuccessful application for hearing de novo before the hearing panel, and again mentioned it in his request for review by the Review Department of the State Bar. Since the hearing officer and the review department were aware of the change in the form and took it into consideration in their recommendations, any impropriety in the failure to more promptly notify petitioner of the change did not deny him a fair hearing.

In any event, as discussed *supra,* the fact that the application form may have been subsequently changed has little bearing on the question of whether the form as written reasonably called upon petitioner to disclose the hearings regarding his moral character. Petitioner's contention that this evidence was wrongfully withheld from him must therefore be rejected.

---

[8] The State Bar also asserts that regardless of whether petitioner accurately answered the questions on the application form, he had an independent affirmative duty to reveal to the committee all matters pertaining to his moral character proceeding. In light of our conclusion that the application form called upon petitioner to disclose the character hearings, and that petitioner committed misconduct by failing to do so, we need not resolve this question.

### III. ADMISSIBILITY OF EVIDENCE

■ Petitioner asserts the hearing panel should have sustained his objection to the admission of the decision in his 1982 moral character proceedings. He argues that the decision was irrelevant to the issues in the present proceeding, and was highly prejudicial to him. He relies on *Stuart v. State Bar of California* (1985) 40 Cal.3d 838 [221 Cal.Rptr. 557, 710 P.2d 357]. In *Stuart* the petitioner complained he was denied a fair hearing because the attorney for the State Bar disclosed his prior disciplinary record to the hearing panel. We rejected the contention, pointing out that the improper disclosure was immediately objected to, the objection was sustained, and a member of the panel stated that the panel would not consider the disclosure in deciding culpability. (*Stuart v. State Bar, supra,* 40 Cal.3d at p. 845.)

In the instant case, the objection to the admission of the hearing panel's decision was overruled. However, in its written opinion the hearing panel stated that it had considered the decision "only for the purpose of showing the following: Respondent was involved in [*sic*] excess of fifty lawsuits between December 1972 and the end of 1980; there had been claims of fraud made against him, and the date that Hearing Panel made its recommendation was July 19, 1985 [*sic*: 1982]." This ruling was proper.

The State Bar rules say nothing about the admissibility of the record in prior moral character proceedings. The admissibility of the record of prior disciplinary proceedings, however, is limited by rule 571 of the Rules of Procedure of the State Bar. Rule 571 states that normally such records are inadmissible until such time as the hearing panel is to determine the issue of appropriate discipline. However, an exception is provided if the record "tends to prove any fact in issue in the pending proceeding, other than the degree of discipline."

Assuming the moral character proceedings may be treated as being the functional equivalent of a disciplinary proceeding, they were not rendered inadmissible by rule 571, as they tended to prove several facts in issue in the pending proceeding. The State Bar was asserting that petitioner was required to disclose the accusations of fraud and the hearings into his character on his 1985 applications to take the bar examination. Such assertions could not be made unless it was established that petitioner had been the subject of claims of fraud and had undergone hearings into his character. The State Bar also had the burden of demonstrating that petitioner had been barred from reapplying for admission to the bar for three years. Finally, to the extent that the incomplete copy of his 1979 application sent by petitioner provided evidence of the willfulness of his actions in filling out the 1985 application forms, it was necessary to show what had been omitted

from the 1979 application form. Admission of the 1982 ruling on petitioner's character was an appropriate way to demonstrate all of these facts. The hearing panel's ruling suggests that it was considering the ruling only for these limited purposes, and not for the light it might shed on petitioner's character. No error appears.

## IV. DENIAL OF DISCOVERY

■ Finally, petitioner claims the failure to grant him discovery of several items denied him a fair hearing. He notes that he sought, by subpoena duces tecum, to obtain a copy of a 27-page report prepared by James B. Tippin, Jr., Executive Director of the Committee of Bar Examiners, on the circumstances leading to petitioner's admission to practice law. The subpoena was quashed by the referee.

Petitioner contends that this report was significant in that it "concerns, in part at least, the inadequacy of the prior application forms to require a disclosure of prior moral character proceedings," as well as the "curative action" taken to amend the application forms. However, as previously stated, petitioner's claim that the application form called upon him to disclose the inquiry into his character stands or falls on the language of the form itself, and subsequent changes to that form or even the beliefs of members of the committee concerning the adequacy of the form have little relevance to this determination.

The basic thrust of petitioner's argument is that the report would demonstrate that it was the negligence of members of the committee that led to his admission. However, as concluded by the hearing officer, any inadequacy on the part of the bar in failing to discover the hearings into petitioner's character does not absolve petitioner of his own failings in the matter. Assuming arguendo that the report would have revealed more clearly that the bar mishandled petitioner's application, such evidence would not alter our evaluation of petitioner's misconduct. Petitioner thus has not shown that the referee erred in quashing the subpoena.

For similar reasons, we must reject petitioner's claim that he was wrongfully denied discovery of confidential questionnaires concerning his moral character, submitted in 1985 by three attorneys whose names petitioner had provided as character references. Petitioner argues that these questionnaires might have placed the bar on notice that petitioner had been the subject of previous hearings into his moral character. However, even assuming the questionnaires contained such information, the State Bar's failure to note this does not relieve petitioner of responsibility for his own misconduct in the matter.

Finally, petitioner claims he was wrongfully denied discovery of a tape-recorded interview conducted by Executive Director Tippin with the State Bar's analyst who conducted petitioner's moral character review. Petitioner had several telephone conversations with the analyst in 1985, which primarily concerned the three previously unresolved cases listed on petitioner's application form. Petitioner testified that in the course of these conversations he told the analyst he did not wish to go through "a moral character hearing" or "another moral character hearing." The analyst, who testified on behalf of the State Bar, had a generally hazy memory of the telephone conversations, and had no recollection that petitioner said anything about other moral character hearings. The tape-recorded interview which petitioner sought to discover apparently was part of an investigation by the State Bar to determine how it was that petitioner's prior history was not discovered.

A discovery referee, after listening to the tape recording in camera, denied the request for discovery on the ground that the tape recording was privileged under Evidence Code section 1040, subdivision (b)(2), and was additionally protected by the work-product privilege. Petitioner sought review of this ruling pursuant to rule 324 of the State Bar Rules of Procedure; the discovery review referee upheld the ruling on the former ground, but not the latter. Petitioner now vigorously argues that the privilege set forth in Evidence Code section 1040, subdivision (b)(2) did not apply, and in any event it was waived because the analyst was called as a witness, and a copy of the tape was given to him.

We need not address the propriety of applying Evidence Code section 1040, subdivision (b)(2) here, as petitioner has failed to show any prejudice resulting from failure to produce the tape. While petitioner claims the tape would have assisted him in attacking the analyst's testimony, that testimony was given little weight. The hearing panel and review department, while specifically concluding that petitioner did not tell the analyst there had been a prior moral character hearing, also found that the analyst's memory was faulty. Moreover, to the extent that petitioner testified he informed the analyst of his prior moral character hearings, this testimony is highly equivocal. Petitioner was unsure whether he told the analyst he wanted to avoid "a" or "another" moral character hearing. Thus, even if the tape recording would have supported petitioner's account of his conversations with the analyst, our conclusion that petitioner committed acts of misconduct would remain unaltered.

### DISPOSITION

The remaining question is what action this court should take in light of the foregoing conclusions. The State Bar suggests that we conduct an

independent review of the record and order petitioner's immediate disbarment. We do not agree. The effect of petitioner's misdeeds was that he was able to prematurely apply for admission to the bar and to be admitted without adequate consideration of his moral character. There is no evidence that petitioner has committed any acts of misconduct since becoming a member of the bar. Under these circumstances, the most appropriate resolution of the matter is to withdraw from petitioner the benefits he wrongfully obtained.

We were confronted with a similar situation in *State Bar* v. *Langert* (1954) 43 Cal.2d 636 [276 P.2d 596]. In *Langert,* we found that an attorney had gained admission to the bar as a result of having made materially false statements on his application. Rather than disbarring him, we ordered his license cancelled and his name stricken from the roll of attorneys. The same remedy is appropriate here.

It is therefore ordered that Marc L. Goldstein's license to practice law in this state is hereby cancelled, and his name is ordered stricken from the roll of attorneys. This order shall be effective upon the finality of this decision.

Petitioner's application for a rehearing was denied March 2, 1989.