[Civ. No. 9760. Third Dist. July 8, 1960.]

RIENER C. NIELSEN et al., Appellants, v. WARREN C. T. WONG, Respondent.

William E. Bartley for Appellants.

Van Dyke & Shaw for Respondent.

PEEK, Acting P. J.—Plaintiffs Riener C. Nielsen and Gene E. Moffatt, copartners, appeal from an adverse judgment in an action for damages resulting from the alleged breach of a joint venture agreement between themselves and defendant Warren C. T. Wong.

In January of 1957 the Board of Supervisors of San Joaquin County, by resolution, authorized Dr. Louis M. Barber, Administrator of the San Joaquin General Hospital, to contact plaintiffs and defendant, all of whom are licensed architects, concerning the design and construction of certain contemplated improvements to the hospital.

On February 5, 1957, pursuant to the previously mentioned resolution, Dr. Barber met with plaintiffs, at which time the intended improvements were discussed. The association between plaintiffs, whose offices were in Los Angeles, and defendant, a Stockton architect, was suggested by Dr. Barber for the purpose of precluding any criticism that local funds were being used to retain outside persons when local architects could perform the duties just as efficiently. A subsequent meeting was arranged, at which time the parties hereto orally agreed to submit a bid jointly and to equally divide the profits from the anticipated contract. It was further agreed that the plaintiffs, because of their previous experience in hospital construction and their larger staff, would be responsible for all structural designs and that defendant's duties would concern the esthetic aspects of the buildings as well as supervision of the actual construction. Although the intent of the parties was to reduce their oral agreement to writing, it was never done. Plaintiffs, with approval of the defendant, drafted a contract in the names of the parties

jointly and submitted the same to the board of supervisors for its approval. This instrument set out the exact specifications for the proposed improvements, the approximate cost and finally the fee to be paid for architectural services. Thereafter plaintiffs made several trips to Stockton to inspect the existing facilities, during which time they met with defendant and members of the board of supervisors for informal discussions concerning the plan which had been submitted.

Prior to Monday, April 29, 1957, the date on which the board of supervisors was to consider the proposal, there had been no indication that the proposal would not be accepted. On the preceding Friday, April 26, while plaintiffs were in Stockton, the presentation to be made to the board at its Monday meeting was discussed and it was decided that defendant alone would appear for the joint venture, and plaintiffs returned to Los Angeles. When the meeting of the 29th was called to order, representatives of the Central Valley Chapter of the American Institute of Architects, a member of the planning commission, an officer of the Stockton Chamber of Commerce, as well as individuals in the construction business generally, appeared and objected to the award of the contract to plaintiffs and defendant. According to an account of the meeting which appeared in a Stockton newspaper (which was introduced as an exhibit), the chief concern was the fact that most of the work would be done by the Los Angeles firm. The architects who appeared agreed that it would be satisfactory for a local man to employ consultants but that no consultant so retained should have a "piece of the job." In response to a question from one of the board members if, under the plan as proposed, it was the feeling then that Wong would be merely "the 'front' man in this deal?" the Chamber of Commerce officer replied, "That's right." At the hearing of the case in the trial court the chairman of the board of supervisors was called as a witness on behalf of the plaintiffs, and in response to a question concerning the discussion which occurred at the April 29th meeting, testified in effect that different architects submitted proposals for the hospital job as well as the one by plaintiffs and defendant; that before the meeting was over there was considerable discussion precipitated by persons in attendance who objected to giving any consideration to anyone who was not a local architect; that Mr. Wong asked for the floor and spoke in favor of the proposal as submitted by himself and the plaintiffs. The witness was then asked by plaintiffs' counsel, "Did the board ask Mr. Wong whether

he would accept the job individually? A. The board asked Mr. Wong if they considered him for the award of the architectural contract, would he be in a position to accept it as an individual, or would he be in a position not to accept it because of his agreement with the Los Angeles firm. He stated that he would rather see it go to the applicants, which is himself and the Los Angeles firm, but I think, as I recall, he also said he was in no way bound not to accept as an individual, if the Board saw fit to award it to an individual.'' This question concluded plaintiffs' direct examination. On cross-examination the witness was asked by defendant's counsel what happened to the joint venture proposal of plaintiffs and defendant, to which he replied: ''Well, it died like all the other proposals.'' He was next asked what discussion, if any, took place among the board members in regard to the contract with Mr. Wong separately. ''A. I do know this: Prior to the award of the contract, the discussion was just general amongst the Board members that after the proposals had been received and after the objections had been heard as to the hiring of outside architects in this particular case, it seemed the consensus of the Board they would hire an architect in San Joaquin County, and at that time it was given individually to Warren Wong.'' Thereafter the court asked of the witness: ''Was there any activity upon Mr. Wong's part that in any way caused the Board in reaching this decision, that is not to hire an outside architect? A. I would say that there was absolutely no action on Mr. Wong's part. In fact he seemed a little flabbergasted and a little bit embarrassed at the turn of events—that would be my personal observation, because at no time did he ever ask for the award of the contract in his own behalf excluding the partners in this particular joint-venture.''

The only other testimony concerning Wong's activities prior to the April 29 meeting was, as previously noted, given by the plaintiff Nielsen who testified to meetings with the board of supervisors and other county officials at which he and Wong urged the acceptance of the joint venture proposal.

The April 29 meeting of the board was adjourned without any decision having been reached upon the various proposals submitted. However, on the afternoon of that same day the board, as the chairman testified, rejected the joint venture proposal and awarded a contract to the defendant individually.

Following the award to defendant, plaintiffs made a special trip to Stockton and met with him in his office. At that

time the defendant expressed his regret for the turn of events, but he refused plaintiffs' proposal to participate in the contract in any manner for the reason that any participation on their part would amount to a breach of faith by him with the board of supervisors.

Shortly thereafter plaintiffs instituted the present action. In their complaint they alleged an oral contract constituting a joint venture; that defendant had breached the same; and that by reason thereof plaintiffs were damaged in the sum of $24,000, the contemplated profits to be derived from the contract as submitted to the county. The court, sitting without a jury, found for the defendant, holding that the parties had entered into an oral agreement for the design of the proposed hospital addition and to equally divide the fees therefrom; that such agreement was based on the condition precedent that the contract for the design of the hospital addition would be awarded to the parties as joint venturers; that the joint venture proposal was rejected by the county; that the rejection was because of local opposition; that the contract awarded to defendant differed from that proposed by the joint venture; and that defendant was innocent of ". . . any fraud, misrepresentation, duplicity, or breach of faith with the plaintiffs."

It is clear that the evidence before the trial court amply supported the finding that the parties entered into a joint venture agreement, although the same was not reduced to writing (see *Nelson* v. *Abraham*, 29 Cal.2d 745 [177 P.2d 931]), and that such an agreement existed between the parties up to the time the board rejected their proposal. Hence the primary question before this court concerns the rights and duties of the parties during that period.

The responsibilities of parties participating in a joint venture are governed by the same standards as are applicable to partners. (*Butler* v. *Union Trust Co.*, 178 Cal. 195 [172 P. 601].) Thus it follows that the relationship between the parties hereto was that of a fiduciary, and hence each party owed to the other the highest loyalty and utmost good faith. (*MacIsaac* v. *Pozzo*, 26 Cal.2d 809 [161 P.2d 449].) Whether or not defendant violated his obligation to plaintiffs as charged was a question of fact for the trial court to determine. (*Wehner* v. *Wehner*, 68 Cal.App. 789 [230 P. 458].) Necessarily, therefore, unless it can be said as a matter of law that the conduct of defendant was antagonistic to the joint venture, and we conclude it was not, the judgment of the trial court must be affirmed.

The record contains no direct evidence of any actions on the part of the defendant which were in any way adverse to the joint venture. While it may be true that his comment before the board of supervisors at the April 29 meeting was susceptible of such an inference, nevertheless there was the testimony of the chairman of the board that ". . . there was absolutely no action on Mr. Wong's part" which was antagonistic to the joint venture. Whatever inference there was to be drawn from such evidence was for the trial court—not this court on appeal. Under such facts and circumstances we cannot say that the finding of the court that the defendant was innocent of ". . . any fraud, misrepresentation, duplicity, or breach of faith . . ." is not supported by the evidence.

The judgment is affirmed.

Schottky, J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied August 3, 1960.

*Assigned by Chairman of Judicial Council.