[L.A. No. 32184. Aug. 3, 1987.]

LAWRENCE J. GALARDI, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Lawrence J. Galardi, in pro. per., for Petitioner.

Raoul D. Magana as Amicus Curiae on behalf of Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Review Department of the State Bar Court that petitioner be ordered suspended from the practice of law for three years, that execution of that order be stayed, and that he be placed on three years' probation with certain conditions, including actual suspension for at least one year and until petitioner pays restitution totaling $186,000 to his joint venturers in various real estate investment projects. The hearing panel had proposed the more lenient sanction of private reproval. We shall conclude that the circumstances of this case warrant 30 days of actual suspension, 5 years of probation, and restitution.

### I.

Petitioner, who was admitted to practice in California in 1971 and in New York in 1959, has no prior record of discipline.

Petitioner entered into two joint venture agreements, one with Bernie L. and the other with John T., to improve and sell two parcels of real estate in Malibu, California. Eventually, both properties were foreclosed, John T. and Bernie L. lost their investments, and petitioner filed for bankruptcy in the United States Bankruptcy Court.

In both matters, the hearing panel (panel) and review department (department) concluded that while no attorney-client relationships existed, petitioner had entered into joint venture agreements and had willfully breached fiduciary duties he owed to his coventurers.

### A. *The John T. Matter*

The panel and department found that in October 1977, petitioner and John T. entered into a joint venture agreement to improve and sell real property on Eagle Pass Avenue in Malibu. Under the contract, petitioner, owner of the Eagle Pass property, promised to obtain construction financing and to sell the property once improvements were complete. John T., a contractor, invested $85,000 in the joint venture, and "[i]n consideration of

said payment" petitioner promised to share with him profits from the sale of the property. John T. also agreed to perform certain construction work at the Eagle Pass property and at two other parcels owned by petitioner on Big Rock Drive and Selfridge Drive in Malibu. The fees for these construction services were negotiated in separate contracts.

The panel determined that petitioner, without John T.'s knowledge or consent, encumbered the Eagle Pass property with two loans, totalling $120,000 and $500,000,[1] respectively, and that the proceeds from these loans were used for nonventure purposes, including petitioner's living expenses. The department agreed with these findings and further determined that John T. had no knowledge of and did not consent to a $30,000 encumbrance, a portion of which petitioner diverted to his personal use.

B.  *The Bernie L. Matter*

Bernie L. was introduced to petitioner by his brother, Richard L., and became interested in investing in one of petitioner's real estate deals. Richard L., an attorney, negotiated for two months with petitioner on his brother's behalf, and in late 1978, Bernie L. and petitioner entered into a written joint venture agreement to purchase, improve, and resell property on Bonsall Drive in Malibu. Bernie L. invested $101,000 in the joint venture.

Petitioner agreed to obtain financing and to supervise the remodeling and sale of the property. He also promised to pay property taxes and all costs and interest related to the financing. By the terms of the joint venture agreement, petitioner expressly promised to act as Bernie L.'s fiduciary and to obtain his consent before encumbering or selling the property; all construction financing was to be spent only on the Bonsall project.

In analyzing the various loans secured by the Bonsall property, the panel found that petitioner used portions of a $250,000 encumbrance and a $500,000 loan (previously discussed in connection with the John T. matter) for nonventure purposes. The department concurred, and additionally determined that all of a $50,000 encumbrance and some of a $60,000 loan were used to pay for petitioner's personal expenses. The department further concluded that all four loans were procured without Bernie L.'s consent and that petitioner had refused to furnish an accounting of funds secured by the Bonsall property; whereas, the panel had found that the $500,000 encum-

---

[1] The $500,000 loan was secured by a deed of trust encumbering the Eagle Pass property in the sum of $400,000 and other Malibu property located on Bonsall Drive in the sum of $100,000. John T. had no interest in the Bonsall property, which was the subject of the joint venture agreement between petitioner and Bernie L.

brance was obtained without the knowledge or consent of petitioner's co-venturer.

The department delineated the following aggravating factors in both matters: (1) petitioner willfully and deliberately breached obligations he owed to his coventurers; (2) despite petitioner's willful and deliberate wrongdoing, he denied culpability and failed to appreciate his fiduciary obligations; and (3) the diversion of loan proceeds to his personal use "constituted a conversion of joint venture assets." As a result, the department concluded petitioner committed acts involving moral turpitude.

## II.

■ It is well settled that this court must independently examine the evidence and pass upon its sufficiency in attorney discipline matters. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 11 [206 Cal.Rptr. 373, 686 P.2d 1177].) Furthermore, we must resolve all reasonable doubts in favor of the attorney. (*Ibid.*) However, the findings of the State Bar Court are entitled to great weight (*id.* at p. 12; accord *Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P2d 993]), and are presumed to be supported by the record (Bus. & Prof. Code, § 6083, subd. (c)).

As we have often observed, the petitioner bears the burden of demonstrating that the findings of the State Bar are not supported by the evidence. (*Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].] "In meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. [Citation.]" (*Himmel, supra,* 4 Cal.3d at p. 794.) In this case, neither petitioner nor amicus, appearing in his support, has met that burden.

### A. *Joint Ventures or Loans*

■ Petitioner and amicus claim the agreements were characterized as joint ventures to conceal the fact that Bernie L. and John T. were loaning petitioner money at usurious rates of interest. In his brief, petitioner characterizes the Bernie L. contract as a "sham" agreement. Even if we were persuaded by his factual claim, petitioner could not escape discipline. Such sham agreements involve deception, which would warrant substantial sanction by the State Bar.

Moreover, we find implausible the claim that petitioner was forced to sign the agreements because he had no other source of funds for escrows on the properties which were about to close. After the escrows closed, he was able

to obtain many bank loans encumbering the properties. Indeed, petitioner, who successfully developed numerous other parcels in the Malibu area, testified that he had an excellent credit rating with local banking institutions. Furthermore, petitioner drafted the John T. agreement, and he negotiated for two months with Richard L. before entering into the contract with Bernie L. These facts significantly undermine his assertion that he was forced into signing the agreements due to his inability to garner financing before the impending escrow closings.

Conflicting testimony was elicited at the hearing as to whether the parties intended their agreements to be joint ventures or mere loans. As we have often stated, however, we are reluctant to disturb the panel's resolution of conflicting testimony, because it "has the opportunity to observe first-hand the demeanor of the witnesses and can better evaluate the veracity of their testimony. [Citation.]" (*Baranowski* v. *State Bar* (1979) 24 Cal.3d 153, 162 [154 Cal.Rptr. 752, 593 P.2d 613].) This principle is especially applicable in a case where, as here, the documentary evidence does not support petitioner's version of the facts.

The written contracts—both signed by petitioner—repeatedly characterize the agreements as joint ventures. The contracts provide for a sharing of "net profits" between petitioner and his coventurers. Nowhere in the documents are the payments from John T. and Bernie L. characterized as loans. Furthermore, petitioner admitted that he had written the following notation on a check: "6112 Bonsall Joint Venture—Galardi/[L.]."

Petitioner and amicus point to the many bankruptcy proceedings in this case for support for the proposition that petitioner merely borrowed money and did not enter into joint venture agreements with Bernie L. and John T. The State Bar, however, was not a party to the bankruptcy actions, and as such is not bound by the findings or conclusions of the bankruptcy courts. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 299, pp. 737-738 and cases cited.) Furthermore, various bankruptcy courts in this matter have arrived at conflicting interpretations of the agreements signed by petitioner and his coventurers, making reliance on the conclusions of any one bankruptcy judge problematic.

We also conclude that the panel's finding that a joint venture existed between Bernie L. and petitioner is not seriously undermined by the fact that Bernie L. declared to the bankruptcy court that he had "agreed to lend" petitioner $101,000 and that he was not petitioner's partner. Reviewing the record as a whole, we conclude that the panel correctly discounted the probative value of the bankruptcy declaration. Given the vast amount of evidence that the parties intended a joint venture, the panel properly might

have concluded that Bernie L. was not being candid when he made the declaration.[2]

Petitioner suggests that, as a matter of law, no joint ventures existed because: (1) he held sole title to the two properties; (2) the agreements contained no express provision for sharing losses; and (3) he did the entire development work while John T. and Bernie L. only contributed money to the enterprise.

His argument is groundless.     A joint venture "may exist although the property forming the capital of the adventure is not jointly owned by the parties [citation] and although one of the parties contributed money, another property and another skill to the enterprise. [Citation.] . . . In addition, the omission of a provision for the sharing of losses in a joint venture is immaterial . . . ." (*Stilwell* v. *Trutanich* (1960) 178 Cal.App.2d 614, 619 [3 Cal.Rptr. 285].)

### B.  *Breach of Fiduciary Duties*

Likewise, there is no merit in petitioner's contention that he owed no fiduciary duties to Bernie L. and John T. Petitioner stresses the fact that the State Bar found no attorney-client relationship between himself and either Bernie L. or John T. However, it is well settled that an attorney may be disciplined for breach of a fiduciary duty owed to a nonclient. (*Worth* v. *State Bar* (1976) 17 Cal.3d 337, 341 [130 Cal.Rptr. 712, 551 P2d 16].) It is equally well established that a joint venturer owes fiduciary duties to his coventurers. (*Boyd* v. *Bevilacqua* (1966) 247 Cal.App.2d 272, 290 [55 Cal.Rptr. 610].) Thus, by virtue of his status as a joint venturer petitioner owed fiduciary duties to John T. and Bernie L. Furthermore, as previously noted, the Bernie L. agreement expressly provides that the parties intended that petitioner act as Bernie L.'s fiduciary.

Petitioner's alleged breaches of fiduciary duty fall into three categories. We see no reason to disturb the State Bar's finding that he willfully breached the fiduciary duties he owed to John T. and Bernie L.

### 1.  *Diversion of Funds*

Petitioner admitted at the hearing that he used funds from loans secured by the Eagle Pass and Bonsall properties for purposes unrelated to

---

[2] In any event, even if we felt Bernie L. was truthful in his declaration, petitioner could still be subject to discipline. Proving a joint venture is one way of establishing petitioner's fiduciary duty. However, the Bernie L. agreement *expressly provides* that petitioner was to act as Bernie L.'s fiduciary. Thus, even if they intended a loan rather than a joint venture, petitioner assumed fiduciary duties by virtue of his contractual promise to be Bernie L.'s fiduciary.

the joint ventures. He provides no evidence to support his assertion that the parties agreed he was free to divert funds to his own use because he was earning no salary while he managed development of the properties.

Amicus points to John T.'s testimony that he owned various properties and had leveraged them to finance development of the parcels, as well as to pay for his living expenses. But the fact that John T. pursued such a practice with regard to his own parcels does not indicate that he agreed to allow petitioner to do the same with regard to funds secured by joint venture property.

Furthermore, there is no merit in amicus's claim that the State Bar's accounting of the $120,000 loan is "unfair" to petitioner. Apparently, petitioner used these funds to pay off a loan encumbering his property on Big Rock Drive. Amicus claims this use of the $120,000 directly benefitted John T. because he had contracted to perform construction services on the site, and that it indirectly benefitted him to the extent that any development at Big Rock would enhance the value of the neighboring Eagle Pass property. But no work was ever started at Big Rock, apparently because the relationship between petitioner and John T. had disintegrated. Thus, John T. never realized even the speculative benefit from this loan urged by amicus.

### 2. *Failure to Obtain Consent to Borrowings*

Petitioner also quarrels with the State Bar's findings that he neglected to notify or obtain the consent of John T., and failed to procure Bernie L.'s consent, before taking out various loans encumbering the properties. Again, we adopt the State Bar's resolution of the conflicting testimony.

The department made findings regarding various loans not discussed by the panel. It is true that the department merely reviewed the hearing transcripts and did not view the witnesses as they testified. Thus, the department was in no better position than this court to resolve conflicting testimony. However, our review of the record reveals no reason why the testimony regarding the various loans should be distinguished. The panel doubted petitioner's sincerity with regard to certain encumbrances, and it was reasonable for the department to conclude his testimony with regard to various other loans was not credible. The recap of the testimony provided by petitioner and amicus does not persuade us to amend these findings.

Amicus correctly states that the written terms of the agreement between petitioner and John T. did not require that petitioner inform his coventurer before mortgaging the Eagle Pass property. However, petitioner's obligation

to inform John T. arose from his duties as fiduciary. Petitioner owed the same fiduciary duties to his coventurer that a partner owes to his fellow partners. (*Nielsen* v. *Wong* (1960) 182 Cal.App.2d 582, 586 [6 Cal.Rptr. 266].) ■ It is undisputed that a partner has no right to use partnership property for purposes unrelated to the partnership. (*Prince* v. *Harting* (1960) 177 Cal.App.2d 720, 727 [2 Cal.Rptr. 545].) Furthermore, " 'every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation [or] concealment . . . .' [Citations.]" (*Ibid.*, quoting *Llewelyn* v. *Levi* (1909) 157 Cal. 31, 37 [106 P. 219].) ■ Here, petitioner used the Eagle Pass property to secure financing to pay for expenses unrelated to the joint venture. By failing to notify and obtain the consent of John T. before encumbering that property with these loans, petitioner breached his fiduciary obligations.

Amicus also stresses the fact that the department did not find Bernie L. was unaware of any loans encumbering the Bonsall property. However, assuming arguendo that Bernie L. knew of these loans, petitioner still is subject to discipline because he failed to obtain Bernie L.'s consent, as required by both the express terms of the written agreement and the fiduciary relationship between the parties.

### 3. *Lack of Accountings*

■ The department properly found that petitioner did not comply with Bernie L.'s request for an accounting of loan proceeds. Petitioner offers no evidence to substantiate his claim he provided accountings, and at the hearing petitioner admitted that he never rendered the requested accountings.

Likewise, amicus erroneously asserts the record reveals petitioner provided Bernie L. with adequate accountings. Bernie L. did testify that petitioner showed him a piece of paper with handwritten notations indicating that approximately $68,000 had been spent on pool construction and other improvements. Finding this "accounting" inadequate, Bernie L. requested a complete and accurate accounting within 14 days. Petitioner did not comply. Moreover, assuming arguendo that petitioner provided a sufficient accounting of the $68,000, he never accounted for the balance of the loans encumbering the Bonsall property.

### C. *Discipline*

■ As we have frequently noted, the department's proposal of discipline is entitled to greater weight than that of the panel. (*Warner* v. *State*

*Bar* (1983) 34 Cal.3d 36, 42 [192 Cal.Rptr. 244, 664 P.2d 148]; *Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106].) It is well established, however, that we render the "ultimate determination" regarding discipline. (*McCray* v. *State Bar* (1985) 38 Cal.3d 257, 272 [211 Cal.Rptr. 691, 696 P.2d 83].) ■■■■ In this case, there is a sizable disparity between the discipline recommendation of the panel and that of the department. While we agree with the department that the panel's recommendation of private reproval is too lenient, we nonetheless conclude that the department's discipline proposal is too harsh.

Apart from the instant proceedings, petitioner's 28-year legal career is unblemished. Petitioner, who has held various positions of responsibility with the United States Department of Justice, has devoted extracurricular effort to the advancement of his profession. He is a member of numerous professional organizations and has taught and lectured extensively on topics related to his fields of expertise. Here, the misconduct occurred in the course of petitioner's business dealings and not during his representation of legal clients. In an appropriate case, the lack of prior discipline may constitute a significant mitigating factor. (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132, fn. 10 [202 Cal.Rptr. 349, 680 P.2d 82].) We find that this is such a case.

In addition, we are concerned that the department's recommendation that petitioner be actually suspended from practice *until* he repays his coventurers would prevent him from ever returning to the practice of law. It is unlikely that petitioner, who has gone through bankruptcy liquidation proceedings, would be able to comply with the restitution requirement if he were unable to practice law. Amicus suggests that petitioner should repay the money that John T. and Bernie L. contributed to the real estate ventures, and that it would be reasonable to expect that petitioner could do so within five years. We agree.

Accordingly, in light of the foregoing concerns regarding petitioner's ability to make restitution, the nature of his misconduct, and his otherwise unblemished record of legal service, we order that petitioner be suspended from the practice of law for one year, and that execution of suspension be stayed and petitioner be placed on probation for five years with actual suspension for the first thirty days of the probationary period. ■■■■■ The conditions of probation are that petitioner (1) pay restitution of $101,000 to Bernie L. and $85,000 to John T.,[3] and that one-fifth of the restitution shall

---

[3] In his brief, amicus argues that because the $85,000 debt was discharged in bankruptcy, restitution to John T. is barred by the supremacy clause of the United States Constitution. (U.S. Const., art. VI.) Petitioner has not objected to the State Bar's restitution recommendation on this ground, and thus he has waived any objection to restitutiuon based on the supremacy clause.

be paid to Bernie L. and John T. each year for the next five years, with the first installments due one year after this decision becomes final and the remaining installments due on the same date in each subsequent year during the five-year probationary period; (2) comply with the State Bar Act and Rules of Professional Conduct of the State Bar of California; and (3) submit to the supervision of a State Bar probation monitor and comply with the reporting requirements, as described in the department's discipline recommendation. We further order that petitioner take and pass the Professional Responsibility Examination within the first year of probation.

Petitioner's application for a rehearing was denied September 2, 1987.