Filed 3/16/21  Hasbun v. O'Connor CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SALEH HASBUN,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>GARY O'CONNOR, individually and as Trustee, etc.,<br><br>　　　Defendants and<br>　　　Respondents. | B299648<br><br>(Los Angeles County<br>Super. Ct. No. PC058689) |

　　　APPEAL from judgment of the Superior Court of Los Angeles County, Melvin Sandvig, Judge.  Affirmed.

　　　Law Offices of John S. Nagle, John Nagle and Robert A. Brown for Plaintiff and Appellant.

　　　Law Offices of Michael Welch and Michael Welch for Defendants and Respondents.

_____

Saleh Hasbun sued Gary O'Connor individually and as trustee of the Money Market Retirement Trust Dated 1-94 (collectively "O'Connor") alleging financial abuse, physical abuse and intentional infliction of emotional distress in violation of the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act or Act) (Welf. & Inst. Code, § 15600 et seq.) and breach of fiduciary duty. The trial court sustained O'Connor's demurrer to the complaint, ruling Hasbun lacked standing to sue for financial elder abuse, his causes of action for physical and emotional distress elder abuse were untimely and he failed to allege a factual basis for finding a fiduciary relationship existed with O'Connor.

Hasbun argues on appeal from the judgment of dismissal that the Elder Abuse Act applies to the taking of property indirectly owned by an elder; a three-year, not two-year, statute of limitations applies to physical and emotional distress elder abuse claims; and the complaint alleges facts sufficient to establish that O'Connor owed Hasbun a fiduciary duty. Hasbun also requests leave to amend his causes of action for physical and emotional distress elder abuse if we conclude, as did the trial court, a two-year statute of limitations applies to those claims. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Hasbun's Complaint for Elder Abuse and Breach of Fiduciary Duty*

In a complaint filed August 1, 2018, Hasbun alleged he was over the age of 65 and had suffered several strokes that affected his mental abilities and general health. O'Connor was a "sophisticated real estate licensed broker and or agent and an investor for over twenty years in real estate in Southern

2

California" and the trustee of the Money Market Retirement Trust dated 1-94.

Hasbun through Boostz, Inc., a California-based subchapter S corporation he owns, and O'Connor invested money as lenders and held secured interests in two real properties in Los Angeles. Other unnamed investors also held secured interests in the properties. In 2011 the investors foreclosed on unpaid notes and acquired the properties. Hasbun alleged O'Connor had collected more than $100,000 in rental income from the properties over a period beginning sometime prior to 2011 and had refused to pay Boostz its share of rental income or to provide an accounting for the rents he had collected.

According to Hasbun's complaint, in 2014 and 2015 O'Connor found parties interested in buying the properties for a sum in excess of $1 million. By this time O'Connor had bought out most of the other investors and owned more than 90 percent of the properties; Boostz owned a 4.2 percent interest. O'Connor began negotiations to acquire the interests of the other investors; those efforts were ultimately unsuccessful. "Enraged" when he was unable to purchase the interests of the other investors, in October or November 2015 O'Connor began stalking and harassing Hasbun. "[A]fter weeks of stalking" O'Connor assaulted Hasbun at his office and "screamed" at Hasbun for 30 minutes while "towering over him and threatening to have him beat up."

Based on these allegations Hasbun asserted claims against O'Connor for violations of the Elder Abuse Act and breach of fiduciary duty.

3

## 2. *O'Connor's Demurrer and the Trial Court's Order*

O'Connor demurred to the complaint. O'Connor argued, because a cause of action for financial elder abuse requires the "real or personal property of an elder" be wrongfully taken or retained (see Welf. & Inst. Code, § 15610.30, subd. (a)(1)) and the complaint alleged Boostz, not Hasbun, owned the interest in the properties, Hasbun's claim for financial elder abuse failed as a matter of law. Hasbun had not, and could not, allege any property belonging to him had been wrongfully taken by O'Connor. As to Hasbun's physical and emotional distress elder abuse claims, O'Connor argued the two-year statute of limitations for personal injuries in Code of Civil Procedure section 335.1[1] applied and barred the claims. Lastly, O'Connor asserted Hasbun's cause of action for breach of fiduciary duty failed because the complaint alleged insufficient facts to support the existence of a fiduciary relationship between the two men.

In his opposition papers Hasbun contended the Elder Abuse Act applied to deprivations of property held indirectly, as well as directly, by an individual 65 years or older. He also argued the three-year limitations period in section 338, subdivision (a), for liabilities created by statute applied to his claims for physical abuse and intentional infliction of emotional distress under the Elder Abuse Act. Finally, Hasbun claimed O'Connor owed him fiduciary duties because they were co-owners and joint investors in real property. Hasbun requested leave to amend his complaint to address any deficiencies that might be found by the court.

---

[1] Statutory references are to this code unless otherwise stated.

4

The trial court sustained O'Connor's demurrer following a hearing on May 31, 2019. The court agreed with O'Connor that, because Hasbun had alleged a corporation owned the interests in the properties, Hasbun could not state facts sufficient to constitute a cause of action for financial elder abuse. Similarly, Hasbun's cause of action for breach of fiduciary duty failed because the corporation owned the property interests and there was no co-ownership or joint investor relationship between Hasbun and O'Connor. The demurrer to these claims was sustained without leave to amend. The court also held section 335.1's two-year limitations period barred Hasbun's physical and emotional distress elder abuse claims. The minute order from the May 31, 2019 hearing notes Hasbun requested leave to amend to allege conduct by O'Connor that occurred through August 2016 and plainly indicated, but did not expressly state, that leave to amend had been granted.[2]

The court entered a judgment of dismissal on June 28, 2019 having sustained the demurrer and "plaintiff electing not to amend" his claims for physical and emotional distress elder abuse. Hasbun timely appealed.

---

[2] The minute order also continued the case management conference from June 19, 2019 to September 12, 2019. There would be no reason for a case management conference to remain on calendar if the demurrer had been sustained without leave to amend in its entirety. To the extent Hasbun was uncertain whether he was authorized to amend the causes of action for physical and emotional distress elder abuse, it was his responsibility to seek clarification from the trial court before his time to amend expired.

## DISCUSSION

### 1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the trial court's ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action or discloses a complete defense. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) However, we are not required to accept the truth of the legal conclusions pleaded in the complaint. (*Mathews*, at p. 768; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) We liberally construe the pleading with a view to substantial justice between the parties. (§ 452; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726; see *Schifando*, at p. 1081 [complaint must be read in context and given a reasonable interpretation].)

"'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint."'" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970-971.) We determine whether the plaintiff has shown "in what manner he [or she] can amend [the] complaint and how that amendment will change the legal effect of [the] pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) "[L]eave to amend should not be granted where . . . amendment would be futile." (*Vaillette v. Fireman's*

*Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685; see generally *Ivanoff v. Bank of America, N.A.*, *supra*, 9 Cal.App.5th at p. 726; *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 618 [the burden of proving a reasonable possibility that the complaint's defects can be cured by amendment """is squarely on the plaintiff""""].)

      2. *The Trial Court Properly Sustained the Demurrer to Hasbun's Elder Abuse Claims*

      a. *Governing law*

The Elder Abuse Act was enacted to protect elders—defined as "any person residing within this state, 65 years of age or older" (Welf. & Inst. Code, § 15610.27)—and dependent adults "by providing heightened remedies that encourage private enforcement of laws against abuse and neglect." (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 858 (*Mahan*); accord, *Strawn v. Morris, Polich & Purdy, LLP* (2019) 30 Cal.App.5th 1087, 1103; see *Tepper v. Wilkins* (2017) 10 Cal.App.5th 1198, 1204 [the Elder Abuse Act was adopted to "protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect"].) The Act protects against "[a]buse of an elder" including "[p]hysical abuse . . . or other treatment with resulting physical harm or pain and mental suffering" and "[f]inancial abuse." (Welf. & Inst. Code, § 15610.07, subd. (a)(1) & (3).)

"Physical abuse" includes assault as defined in Penal Code section 240 (Welf. & Inst. Code, § 15610.63, subd. (a)), which provides, "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." "Mental suffering" means "fear, agitation, confusion, severe depression, or other forms of serious emotional distress

that is brought about by forms of intimidating behavior, threats, harassment, or by deceptive acts performed or false or misleading statements made with malicious intent to agitate, confuse, frighten, or cause severe depression or serious emotional distress of the elder or dependent adult." (*Id.*, § 15610.53.) The Act defines "financial abuse" as occurring when "a person or entity . . . [¶] [t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." (*Id.*, § 15610.30, subd. (a)(1).)

The Elder Abuse Act requires varying standards of proof depending on the type of abuse claimed and provides for remedies that may be sought "in addition to all other remedies provided by law." (See, e.g., Welf. & Inst. Code, §§ 15657 [reasonable attorney fees and costs shall be awarded upon "clear and convincing evidence that a defendant is liable for physical abuse . . . and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse"], 15657.5 [authorizing action for damages and recovery of enhanced remedies in certain circumstances involving financial elder abuse].)

> b. *Hasbun lacks standing to assert a financial elder abuse claim*

Hasbun concedes the property interests at issue were owned by a corporation, not by him. However, Hasbun argues he has standing to pursue a financial abuse claim because the Elder Abuse Act applies to the taking of property owned "directly or indirectly" by an elder and he owned the property interests indirectly as the sole shareholder of Boostz.

8

Although Hasbun is correct that, under certain defined circumstances, the Elder Abuse Act covers the deprivation of property not held directly by an elder or dependent adult, the Act's scope is not nearly as broad as he contends.  Financial abuse under the Act occurs "when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult."  (Welf. & Inst. Code, § 15610.30, subd. (c).)  The following subdivision, however, narrowly defines a "representative" as "a person or entity that is either . . . : [¶] (1) [a] conservator, trustee, or other representative of the estate of an elder or dependent adult [or] [¶] (2) [a]n attorney-in-fact of an elder or dependent adult who acts within the authority of the power of attorney."  (*Id., § 15610.30,* subd. (d).)

This statutory language cannot be read to include property owned by a corporation.  (See *In re Bryce C.* (1995) 12 Cal.4th 226, 231 ["[g]enerally, the expression of some things in a statute implies the exclusion of others not expressed"]; *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [same]; *Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 159 [same].)  None of the indirect holding exceptions specified in the Act applies in this case.  The property interests at issue were not held by a conservator, trustee or other representative of Hasbun's estate or by Hasbun's attorney-in-fact acting pursuant to a power of attorney.  Instead, they were owned by a corporation, which exists as a legal entity separate and apart from its shareholders.  (See *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 ["[i]t is fundamental that a corporation is a legal entity that is distinct from its

9

shareholders"]; *Presta v. Tepper* (2009) 179 Cal.App.4th 909, 910 [a corporation "is a distinct legal entity separate from its stockholder and from its officers . . . and deemed a person within many legal constructs"; internal quotation marks omitted]; see also § 17, subd. (b)(6) ["'[p]erson' includes a corporation as well as a natural person"].) Because a corporation, and not Hasbun, owned the property interests, Hasbun did not have standing to pursue a claim for financial abuse under the Elder Abuse Act. (See *Hilliard v. Harbour* (2017) 12 Cal.App.5th 1006, 1015 [plaintiff did not have standing to sue individually for financial elder abuse because his claim did not "originate in circumstances independent of his status as a shareholder in the Companies, and his claim therefore cannot be deemed personal"].)

Hasbun's reliance on *Bounds v. Superior Court* (2014) 229 Cal.App.4th 468 (*Bounds*), for the proposition that property owned by a corporation is akin to property held in a trust is misplaced. In *Bounds* an elderly widow and her living trust, of which she was trustee, sued for financial elder abuse based on allegations the defendants had defrauded her into entering into escrow to sell real property held in the trust. (*Id.* at p. 472.) Although the escrow was canceled and the trust retained the property, the widow claimed the existence of escrow instructions impaired the right to sell the property at fair market value or to use the property to secure a loan on favorable terms. (*Ibid.*) The court of appeal granted mandamus relief, vacating the order sustaining the demurrer to the financial elder abuse claims, because "property right[s]" under the Elder Abuse Act included the right to use and sell real property. (*Ibid.*)

*Bounds* addressed a legal issue very different from the question of standing before us.[3]  In any event, as discussed, the Elder Abuse Act expressly authorizes a claim for financial elder abuse based on the deprivation of an elder's property held in trust.  Moreover, in *Bounds* the protected elder was the trustee and, as such, retained ownership of the property at issue in that capacity.  Unlike a corporation, which exists as a distinct legal entity from its shareholders, "[a]n ordinary express trust is not an entity separate from its trustees." (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1132, fn. 3, internal quotation marks omitted; accord, *Presta v. Tepper*, *supra*, 179 Cal.App.4th at p. 910.)  A trust is a fiduciary relationship with respect to property; the real party in interest in litigation involving a trust is always the trustee.  (See *Moeller*, at p. 1132, fn. 3; *Presta*, at p. 910; cf. § 369, subd. (a)(2) [trustee of an express trust "may sue without joining as parties for whose benefit the action is prosecuted"].)  These characteristics that differentiate a trust from a corporation undermine Hasbun's proposed analogy.

Hasbun's reliance on *Mahan, supra*, 14 Cal.App.5th 841 to support his argument an indirect deprivation of his property owned by a corporation is sufficient to confer standing under the Elder Abuse Act is also unavailing.  *Mahan* involved life insurance policies purchased by the elder plaintiffs that named

---

[3]  As summarized by the court of appeal, the issue before it was "whether to allege a 'taking' of a property right under the Act, it is sufficient to plead that an elder has entered into an unconsummated agreement which, in effect, significantly impairs the value of the elder's property, or whether the Act requires that the agreement have been performed and title have been conveyed." (*Bounds*, *supra*, 229 Cal.App.4th at p. 472.)

11

their children as beneficiaries.  (*Id*. at p. 846.)  The policies were held in a trust, created as part of their estate plan, of which their daughter was the trustee and beneficiary.  Although the trust (and its trustee)—not the elder plaintiffs—owned the life insurance policies, the court held the elder plaintiffs had standing to pursue claims under the Act because "[t]he linchpin of the alleged scheme by Respondents was the 'donative transfer' of money and assets by the Mahans to the Trust."  The monies the elder plaintiffs allegedly were defrauded into transferring to the trust to pay for term coverage and commissions, along with the damage caused to their estate plan, were properly considered "property of an elder."  (*Id*. at p. 862.)  Thus, using the trust as the vehicle for deprivation, the defendants indirectly deprived the elder plaintiffs of their property.  (*Id*. at pp. 861-862.)

Unlike in *Mahan*, Hasbun has not alleged that O'Connor used Boostz as a vehicle to somehow deprive Hasbun of his property or that O'Connor defrauded Hasbun into transferring money to Boostz, which O'Connor then wrongfully took.  Nor are there any allegations Hasbun set up the corporation as part of his estate plan.  Even apart from the difference for purposes of the Elder Abuse Act between an asset held in trust and one owned by a corporation, these factual differences render *Mahan* inapposite.

Hasbun's remaining argument attempts to distinguish between the corporation's ownership interest in the real properties and the rental income generated by those properties based on the fact that, because Boostz is a subchapter S corporation, the rental income would have been treated as

personal income for tax purposes.[4]  (See *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1032, fn. 3 [explaining income and losses of an S corporation, like those of a partnership, ""pass[ ] through"" on a pro rata basis to its shareholders, who report those items on their personal tax returns"]; see Saltzman et al., IRS Practice & Procedure (2013) ¶ 13.10 (2)(a) [a "subchapter S" corporation is one "whose separate identity is disregarded for tax purposes"].)  But Hasbun cites no authority for the proposition that the tax treatment of income generated by an S corporation somehow converts ownership of that income from corporate to personal.  Regardless of special provisions in the tax laws, any rental income remains derivative of the interests in the properties owned by the corporation.  "But for his shareholder status," Hasbun would not have been injured by O'Connor's alleged withholding of rental income.  (*Hilliard v. Harbour*, *supra*, 12 Cal.App.5th at p. 1015 [elder plaintiff "created the . . . LLC in order to limit his liability; there is no policy reason to permit him to enjoy the benefits of that limitation without accepting the concomitant burdens it entails"].)  Characterizing the taken property as rental income does not bring Hasbun's financial abuse claim within the ambit of the Elder Abuse Act.

---

[4]     At oral argument counsel for Hasbun asserted the complaint alleged that the rental income was to have been paid directly to Hasbun.  It did not.  In fact, the complaint repeatedly alleged Hasbun's interests in the properties and the rental income were "vis a vis his S Corp."  Further, when probed at oral argument, counsel for Hasbun stated only that Hasbun could plead with greater specificity that rental income was to be paid to him directly as pass-through income from Boostz, not that he was entitled to that income in his individual capacity, separate from his status as a shareholder of the subchapter S corporation.

c. *A two-year statute of limitations applies to Hasbun's physical abuse and emotional distress causes of action*

The Elder Abuse Act does not specify the limitations period applicable to claims for physical abuse and infliction of emotional distress under the Act. The trial court applied the two-year statute of limitations applicable to personal injury claims as set forth in section 335.1[5] and ruled Hasbun's claims were time-barred. Hasbun contends the three-year statute of limitations in section 338, subdivision (a), applicable to statutory causes of action, governs his claims under the Elder Abuse Act and that he timely filed these two causes of action.[6]

Section 338, subdivision (a), specifies a three-year limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." "Courts have held that 'liability created by statute' means ""'the liability is embodied in a statutory provision *and* was of a type which did not exist at common law.'"""" (*Lehman v. Superior Court* (2006) 145 Cal.App.4th 109, 118; see *Briano v. Rubio* (1996)

---

[5] Section 335.1 establishes a two-year limitations period for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

[6] *Benun v. Superior Court* (2004) 123 Cal.App.4th 113, 125-126, relied upon by the trial court, held the two-year limitations period in section 335.1, not the three-years-from-injury/one-year-from-discovery statute of limitations in the Medical Injury Compensation Reform Act (MICRA) (§ 340.5), applied to a physical elder abuse claim against a healthcare provider. *Benun* did not consider the possible applicability of section 338, subdivision (a).

14

46 Cal.App.4th 1167, 1175 ["[a] cause of action is based upon a liability created by law only if it exists by virtue of an express statute or constitutional provision, and did not exist at common law," italics omitted]; see also *Coombes v. Getz* (1933) 217 Cal. 320, 335 [analyzing the phrase "created by law" contained in section 359 and explaining the phrase refers to liability that was first authorized by statute or the Constitution, not the common law].)

Because the three-year statute of limitations in section 338, subdivision (a), applies only if liability in some form would not exist but for the statute, it does not govern Hasbun's claims under the Elder Abuse Act.  (Cf. *Jackson v. Cedars-Sinai Medical Center* (1990) 220 Cal.App.3d 1315, 1320-1321 [acknowledging the Lanterman-Petris-Short Act "clearly refined the law with respect to involuntary mental patients" but holding section 338 did not apply "[b]ecause the common law recognized that one wrongfully taken into custody on psychiatric grounds had an actionable wrong"].)  "'Any statutory "modification, alteration or conditioning" of a common-law cause of action which falls short of creating a previously unavailable cause of action does not transform that cause of action into "an action . . . upon a liability created by statute."'"  (*Lehman v. Superior Court, supra,* 145 Cal.App.4th at p. 119; see *Brandenburg v. Eureka Redevelopment Agency* (2007) 152 Cal.App.4th 1350, 1363 [holding section 338 did not apply to claims under Government Code section 1090 because the "expan[sion] or modifi[cation] [of] the basic common law prohibition against public officials having an interest in public contracts to include contracts made by a board or body of which the official is a member" did not create a previously unavailable cause of action].)  Nor is liability created

by the expansion of available remedies for a breach of duty existing at common law.  (*Lehman*, at p. 119.)

The Elder Abuse Act undoubtedly expanded remedies available to elders and dependent adults who have suffered physical abuse and emotional distress (Welf. & Inst. Code, §§ 15657, 15657.5), but the Act did not create new causes of action to address those wrongs.  Though it has long been codified, liability for physical abuse, and specifically assault, existed first at common law.  (See *People v. Yslas* (1865) 27 Cal. 630, 633 [explaining "[t]he common law definition of an assault is substantially the same as that found in the statute"]; see also *People v. Bailey* (2012) 54 Cal.4th 740, 750 ["[i]n determining the meaning of 'attempt' in [Penal Code] section 240, we have looked to the historical "'common law definition'" of assault"].)  Likewise, liability for intentional infliction of emotional distress existed, and continues to exist, at common law.  (See *State Rubbish Collectors Assn. v. Siliznoff* (1952) 38 Cal.2d 330, 338 [intentional infliction of emotional distress is a common law tort].)  Accordingly the trial court correctly ruled a two-year limitations period applied to these causes of action.  (See Code of Civ. Proc., § 335.1 [action for assault must be commenced within two years]; *Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 852-853 ["[i]ntentional infliction of emotional distress has a two-year statute of limitations"].)

The holding in *Perlin v. Fountain View Management, Inc.* (2008) 163 Cal.App.4th 657, 666, that the Elder Abuse Act "creates an independent cause of action" and does not merely enhance remedies, made in the context of evaluating the elements of a successful elder abuse claim necessary for an award

16

of attorney fees, does not affect our conclusion.[7] Even if the Act has created independent causes of action, the question for limitations purposes is whether the type of liability encompassed by the statute is one that did not previously exist at common law. As discussed, liability for physical abuse and infliction of emotional distress under the Act are simply variants of causes of action that existed at common law.[8]

---

[7]  A split of authority exists whether the Act creates an independent cause of action or simply provides additional remedies for existing causes of action.  (Compare *Perlin v. Fountain View Management, Inc.*, *supra*, 163 Cal.App.4th at p. 666 with *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 529 ["[t]he Act does not create a cause of action as such, but provides for attorney fees, costs, and punitive damages under certain conditions"].)  At least one court of appeal has observed, "An elder abuse claim could be a 'cause of action' for some statutory purposes but not others."  (*Smith v. Ben Bennett, Inc.* (2005) 133 Cal.App.4th 1507, 1525 ["[w]e are not convinced that a Platonic approach—under which an elder abuse claim must abstractly *be* either a 'cause of action' or a plea for 'enhanced remedies'—is fruitful"].)

[8]  Hasbun's argument in his reply brief for a three-year limitations period because his allegations of stalking and intimidation constitute "physical abuse" under the Elder Abuse Act, but not common law assault, is mistaken.  "Physical abuse" under the Act is expressly defined by Welfare and Institutions Code section 15610.63 and does not include intimidation and stalking.  If asserted in a timely manner, however, harassment of that sort could be part of a claim for emotional distress under the Act, which includes "serious emotional distress that is brought about by forms of intimidating behavior, threats, harassment, or by deceptive acts."  (Welf. & Inst. Code, § 15610.53.)

17

The analysis generally utilized to determine the applicable limitations period for a particular claim further supports our conclusion that section 335.1 applies to Hasbun's physical and emotional distress elder abuse causes of action. "[T]o determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22; accord, *Smith v. Ben Bennett, Inc.* (2005) 133 Cal.App.4th 1507, 1525.) "The nature of the cause of action and the primary right involved, not the form or label of the cause of action or the relief demanded, determine which statute of limitations applies." (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 412; accord, *Smith*, at p. 1525; *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1153; see *Jefferson v. J.E. French Co.* (1960) 54 Cal.2d 717, 718.) The gravamen of Hasbun's claims is that O'Connor violated his right to be free from physical and emotional abuse. (See *Estate of Dito* (2011) 198 Cal.App.4th 791, 802 [Elder Abuse Act claims address the primary rights "not to be abused or defrauded"].) The two-year statute of limitations in section 335.1 applies to claims of personal injury and, therefore, applies to Hasbun's physical abuse and emotional distress claims under the Elder Abuse Act.

3. *The Trial Court Properly Sustained the Demurrer to Hasbun's Cause of Action for Breach of Fiduciary Duty*

Hasbun contends O'Connor owed him a fiduciary duty because they were co-investors in real estate and because O'Connor acted in his capacity as a licensed real estate agent on behalf of the co-investors, including as a property manager collecting rental income. Although it is "well established that a

18

joint venturer owes fiduciary duties to his coventurers" (*Galardi v. State Bar* (1987) 43 Cal.3d 683, 691), Hasbun failed to allege facts establishing he and O'Connor were engaged in a joint venture or that he had any other business affiliation with O'Connor that would create a fiduciary relationship between the two men.

Hasbun admitted that Boostz, not Hasbun, was the co-investor in the properties. Hasbun's alternative argument that O'Connor owed him a fiduciary duty as a "majority shareholder" is misdirected. The authorities Hasbun cites concern the fiduciary duties owed by majority shareholders of a corporation to minority shareholders of the same corporation. (See, e.g., *Stephenson v. Drever* (1997) 16 Cal.4th 1167, 1178 ["'[m]ajority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority'"]; *Steinberg v. Amplica, Inc.* (1986) 42 Cal.3d 1198, 1202 [determining the remedies available to a minority shareholder who alleged his shares were undervalued during a merger because of fraud and breach of fiduciary duty by the majority stockholders in the corporation].) Hasbun and O'Connor were never shareholders of the same corporation. The trial court properly sustained O'Connor's demurrer to this cause of action.

### 4. *Hasbun Has Forfeited His Right to Request Leave To Amend*

Hasbun requests leave to amend if we rule a two-year statute of limitations applies to his physical and emotional distress elder abuse claims, asserting O'Connor's "conduct in non-financial abuse persisted through August 2016," that is, within two years of the August 1, 2018 filing date of his complaint.

19

The trial court granted Hasbun leave to amend his causes of action for physical and emotional distress elder abuse, but he elected not to amend his complaint. Hasbun thereby forfeited his right to request leave to amend in this court. (See *Foxen v. Carpenter* (2016) 6 Cal.App.5th 284, 296 [plaintiff forfeited right to request leave to amend on appeal because the court sustained defendant's demurrer with leave to amend and plaintiff chose not to file an amended complaint]; see *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 861 [declining opportunity to amend complaint in the trial court forfeits right on appeal to request leave to amend].)

"'[W]hen a plaintiff is given the opportunity to amend his complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he can.'" (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091; see *Zolly v. City of Oakland* (2020) 47 Cal.App.5th 73, 82 [same].) In that circumstance, "unlike when a demurrer is sustained without leave to amend, we determine only whether the plaintiff stated a cause of action, and not whether the plaintiff might be able to do so." (*Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 764; see *Soliz v. Williams* (1999) 74 Cal.App.4th 577, 585 ["'[w]hen a plaintiff elects not to amend the complaint, it is presumed that the complaint states as strong a case as is possible [citation]; and the judgment of dismissal must be affirmed if the unamended complaint is objectionable on any ground raised by the demurrer'"].) Because the allegations as pleaded fail to state causes of action, we affirm the judgment of dismissal.

## DISPOSITION

The judgment is affirmed.  O'Connor is to recover his costs on appeal.


PERLUSS, P. J.

We concur:


FEUER, J.


McCORMICK, J.[*]

---

[*]    Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.